EMILY SPRONG, adm'x &c., *vs.* THE BOSTON AND ALBANY RAILROAD COMPANY.

In an action against a railroad company, to recover damages of the defendant, for causing the death of the plaintiff's intestate, a brakeman in its employ, by negligence, the defense was that the intestate was guilty of negligence, or want of care, which contributed to his death, in being absent from his post, at the time, and omitting to apply the brakes.  And the evidence rendered it more than probable that but for such absence, his life would not have been endangered.  *Held* that it was erroneous for the judge to leave it to the jury to determine whether the intestate being absent from his post, warming or enjoying himself by a fire, was guilty of contributory negligence; whether the absence of a caboose did not authorize him to leave his post, in a cold morning; and whether the train being on an ascending grade, he had not a right to suppose his services were not as likely to be called in request as they would be on a downward grade.

And that it being probable that the jury were influenced by these considerations, so submitted to them, it was a proper case for a new trial.

MOTION for a new trial, on exceptions directed to be heard in the first instance at a general term, and on an appeal by the defendant from an order denying a motion for a new trial upon the judge's minutes.

Matthew Hale, for the plaintiff.

John H. Reynolds, for the defendants.

Sprong *v*. Boston and Albany Railroad Company.

*By the Court*, POTTER, J. This action was brought to recover damages against the defendants, for causing the death of the plaintiff's intestate, Charles H. Sprong, by negligence. Sprong, at the time of his death, was a brakeman in the service of the defendants. On the 3d of February, 1870, about a quarter before 5 o'clock in the morning, he left East Albany for Pittsfield, on a train of eleven freight cars, drawn by the engine "Maine." Previous to the time of starting, another freight train of eighteen cars had departed from the same place, going in the same direction, drawn by an engine called the "Louisville." Before reaching Chatham Four Corners, while upon a heavy up grade, the train upon which Sprong was brakeman, and at about 6 o'clock A. M., was struck by eleven cars, which had got detached from the preceding train, and were rapidly descending this grade; coming in collision with the train upon which Sprong was a brakeman; and Sprong, with the conductor and fireman, were immediately killed. It is for the negligence of the defendants, in letting this advance train thus get loose, and rush back to the destruction of the life of Sprong, that this action is brought.

Two material questions are presented in the case: 1st. Was the defendant guilty of negligence in the omission to furnish competent, and a sufficient number of, servants and appliances, in the running and controlling the trains in question? 2d. Was the plaintiff's intestate guilty of negligence or want of care, which caused or contributed to his death?

I. As to the first question, upon the evidence and charge of the learned judge, it seems to have been fairly and legally presented to the jury, and if the result of the jury's finding had been upon this evidence and charge alone, no proper exception would seem to be found in the case. There was evidence tending to prove the want of a sufficient number of brakemen, and some evidence of a want

of competent brakemen, and of the suitable habits of those employed, to have that question submitted to the jury; and also whether the defendants had, through their authorized agents, performed the obligatory duty which they owed to their employees, in providing suitable and sufficient servants and appliances for their protection. (*Buckner* v. *New York Cent. R. R. Co.*, 2 *Lans.* 506.)

II. As to the second question—whether the plaintiff's intestate was himself guilty of negligence or want of care, which contributed to his death—I am not able to adopt the theory of the learned judge in his charge to the jury. While I think the legal presumption must be that the employee has knowledge of the rules of his employer, in regard to the duties he is charged to perform, yet I do not place my opinion on this ground. But I cannot agree that a brakeman, who must be presumed to have entered upon his employment with a knowledge of his duties and the hazards of his employment, may so far be the judge of what is for his own comfort or convenience, that at his option or discretion he may abandon his post, and leave his employer's property, or the lives of his passengers, at hazard for his own comfort; or that a jury may have it submitted to them as a question of fact, whether he was justified in thus leaving his post. He knew, in the contemplation of law, the exposures and the hazards incident to the duties he assumed. There was no compulsion upon him to enter upon these duties; he chose them; he preferred them on account of their rewards; he took them subject to their incidental perils. In cold or heat, in storm or sunshine, the duty of a brakeman is to be at his post; to be awake; to be ready at every instant, for the dangers are mostly instantaneous, sudden, fearful. It might be comfortable to go to the engine to warm; a furnished parlor, well warmed, would be more so. It is neither for a jury to find, nor for the servant to dictate to the employer, the style or character of the comforts that the latter shall

Sprong *v.* Boston and Albany Railroad Company.

provide. That is to be inquired about when the employment is undertaken. There is no statute or common law requiring a caboose, and none that forces a servant to be employed with or without them. The service is voluntary, upon the hazards presumed to be known. There is no reason why a railroad company, less than any other principal, may not conduct its own affairs upon their own plans and regulations, subject always to their legal obligations to the public. And neither courts, juries, nor the servants of such corporation have a right to dictate what clothing, food or other furnishings shall be provided by them. What kind of order among themselves, or security, could they furnish to the public, if their arrangements, in these respects, are to be made subject to the caprice of juries; and what then would ever be settled as law? The learned judge, in this case, left it to the jury to determine whether the plaintiff's intestate, being absent from his post as brakeman, warming or enjoying himself by a fire, was guilty of negligence—contributory negligence; whether the absence of a caboose did not authorize him to leave his post in a cold morning; and whether, the train being on an ascending grade, he had not a right to suppose his services were not as likely to be called in request as they would be on a downward grade?

It is probable the jury were influenced by these considerations so submitted to them. I think they were. These propositions were excepted to. I think, with all deference, they were erroneous, and the exceptions should be held good. The evidence is such that it is more than probable that had Sprong been at his post, his life would not have been endangered; even if he had omitted to apply the brakes. I think the case was erroneously presented to the jury on this question, and that a new trial should be ordered.

New trial granted.

[Third Department, General Term, at Binghamton, June 6, 1871. *Miller*, P. J., and *Potter* and *Parker*, Justices.]