SELENA TINNEY, adm'x &c., *vs.* THE BOSTON AND ALBANY RAILROAD COMPANY.

There is no holding, in this State, that a railroad company is bound to furnish a safe road-bed, or in default thereof is liable for an injury to one of its employees, occasioned by such default. *Per* BALCOM, J.

Where a fireman in the employ of a railroad company lost his life by reason of a switch not being placed so that the locomotive he was on would run upon a track other than the one on which it went, and ran off; and it was insisted that the switch was wrongly placed, or was misplaced, and so caused the death of such fireman; but the fixing of the switch in the way it was placed was not traced to the railroad company, or either of its employees; *Held,* in an action brought by the administratrix of the deceased, to recover damages of the company, that the judge was right in refusing to submit the case, or any question in it, to the jury; and that he correctly nonsuited the plaintiff.

*Held, also,* that this was merely the case of the death of one of the defendant's employees either by reason of his own carelessness, or the negligence of another employee of the defendant, engaged in the same general business with the one killed.

THIS action was brought by the plaintiff to recover damages, as administratrix of her deceased son, David J. Tinney, who was killed while in the service of the defendant, as fireman on a locomotive, on the 30th day of May, 1871, at East Albany. The plaintiff claimed that she was entitled to recover in consequence of the defendant's negligence, in failing to have a sufficient number of

Tinney *v.* Boston and Albany Railroad Company.

switchmen at the place where David J. Tinney was killed, and also in employing an incompetent switchman there.

The deceased was a fireman on the defendant's locomotive "Trojan," which was used in hauling cars from the Hudson river bridge, in the defendant's yard, at East Albany.

On the trial, at the Albany circuit, in December 1871, the plaintiff was nonsuited. She excepted to the nonsuit, and requested the judge to submit to the jury the question, whether the defendant was negligent in not employing a sufficient number of men to take charge of the switches; also the question whether La Clare, the switchman actually employed, was not incompetent; also generally, whether the defendant was not shown, by the evidence, to be guilty of negligence. But each of those requests was declined, and the plaintiff duly excepted.

Judgment was suspended, and the judge directed that the plaintiff's exceptions be heard in the first instance at the general term of this court.

The plaintiff now moves for a new trial, on her exceptions.

*Matthew Hale,* for the plaintiff.

*John H. Reynolds,* for the defendant.

*By the Court,* BALCOM, J. The head-note to *Snow* v. *Housatonic Railroad Company,* (8 *Allen,* 441,) is that " a railroad company may be held liable for an injury to one of its servants, which is caused by a want of repair in the road-bed of the railroad." But there is no holding, in this State, that a railroad company is bound to furnish a safe road-bed, or in default thereof is liable for an injury to one of its employees by reason of such default. Bacon, J., in delivering the opinion of the Court of Appeals, in *Warner* v. *The Erie Railway Company,* (39 *N. Y.* 468,) re-

ferred to the case of *Snow* v. *Housatonic Railroad Company*, (*supra*,) and said : " It is susceptible of the criticism that the defect in the track, through which the injury was suffered, was palpable to view, and was known to, and was grossly neglected by, the track repairer, whose specific duty it was to remedy the defect." But it cannot be said that decision was approved in *Warner* v. *The Erie Railway Company*, (*supra*.) Nor did this court hold, in *Faulkner* v. *The Erie Railway Company*, (49 *Barb*. 324,) that a railway company is bound to provide its employees with a safe roadway, or pay damages for injuries to such employees by reason of defects in its road-way. And no such principle was held in *Brickner* v. *The New York Central Railroad Company*, (2 *Lansing*, 506.)

The deceased, in this case, lost his life by reason of a switch not being placed, by some person, so that the locomotive he was on would run upon a track other than the one on which it went and ran off. It was a three frog switch, that the plaintiff's counsel insists was wrongly placed, or was misplaced, and caused the death of the deceased. But the fixing of that switch, in the way it was placed, was not traced to the defendant, or either of its employees.

I am unable to see that the defendant was chargeable with negligence because one La Clare was acting as switchman in the defendant's yard the day the deceased was killed. He was not the regular switchman employed there ; and the fair and just inference from the evidence is, that he was there without the knowledge of the defendant, or of its agent who had authority to employ a switchman there, and by exchange with the regular switchman there, whose competency was not questioned at the trial. It cannot be assumed that the defendant was responsible for the absence of its regular switchman that day. But La Clare had had some experience in switching at previous times ; and the evidence would not

justify us in holding that the deceased lost his life by reason of any carelessness or incompetency of La Clare as a switchman.

The business of the locomotive " Trojan," on which the deceased was acting as fireman when he was killed, was hauling cars into the defendant's yard, and switching there. He had been at work on that locomotive there about fifteen days, before his death. That locomotive was drawing or pushing several cars when the deceased was killed. Two or three brakemen were then on that train, who sometimes tended or changed the switches in the yard there. In switching cars it was their duty, at times, to shift their own switches for their own accommodation. And the engineer on the locomotive had the right to stop his train and have his brakeman change the switches. It is probable if the brakemen had all been at their places they could have stopped the train and saved the life of the deceased. Four men were riding on the locomotive (three besides the deceased) when the difficulty with the switches was first discovered. The engineer did not then shut off steam, or whistle, though he did before he jumped off the locomotive. And it is possible, and perhaps probable, that he could not have stopped the train if he had done all he could in that direction from the time he first discovered the danger he was in there. There were three or four brakemen on some of the trains in the yard, and it was the practice that they did the switching for their own trains when occasion required.

I am of the opinion the evidence failed to show that the defendant was liable for damages in this action. I think it cannot be said that the deceased lost his life exclusively by reason of the carelessness or incompetency of La Clare, or of any employee of the defendant, of whose incompetency the defendant had knowledge or notice. And I am of the opinion the defendant was not liable for damages in this action, on the ground that it did not have a

Tinney *v.* Boston and Albany Railroad Company.

greater number of switch tenders in the yard where the deceased was killed. The deceased knew the condition of matters in that yard, and that brakemen on the trains which the locomotive he was on drew, sometimes were required to act as switchmen.

I do not think the obligation on the defendant, if conceded, of providing suitable and sufficient servants and appliances for its protection, according to the decisions of this court, in *Buckner* v. *N. Y. Central R. R. Co,* (2 *Lansing,* 506,) and *Sprong* v. *Boston and Albany R. R. Co.,* (60 *Barb.* 30,) rendered it liable to the plaintiff on the evidence in the case. And I am of the opinion a case would not have been proved against the defendant if the judge had received all the evidence he rejected, that the plaintiff offered to give. It therefore is unnecessary to determine whether the judge erred in rejecting any of the offers of evidence made by the plaintiff's counsel.

This case, in my judgment, is merely that of the death of one of the defendant's employees, either by reason of his own carelessness, or the negligence of another employee of the defendant engaged in the same general business with the one who was killed.

If these views are correct, the judge was right in refusing to submit the case, or any question in it, to the jury, and correctly nonsuited the plaintiff.

My conclusion is, that the plaintiff's motion for a new trial should be denied, with costs.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Miller,* P. J., and *P. Potter* and *Balcom,* Justices.