LOCKWOOD, Administrator, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*March 17 — May 10, 1882.*

RAILROADS: NEGLIGENCE. *(1) Duty of stoppage near crossing. (2) Rate of speed on curve: Court and jury. (3) Unlawful speed in city: when negligence. (4) Presumption of negligence from derailment of train: how rebutted. (5) Proof of contributory negligence of employee: Nonsuit.*

1. Under sec. 1808, R. S., it is the duty of a railway train approaching a railway crossing to come to a stop, not immediately at the 400-foot post, but somewhere between that post and the crossing.

Lockwood, Adm'r, vs. The Chicago & Northwestern R'y Co.

2. There was no error in refusing to submit to the jury the question whether the defendant railway company was negligent in running its train at the rate of eight or ten miles an hour on a certain curve, where all the evidence in the case, as well as common experience, shows that trains are daily run with safety at a much greater speed over similar curves, and where it appears conclusively that the track was in good condition.

3. The fact that a train was run at an unlawful rate of speed within a city, is no ground for imputing negligence to the railway company as between it and its employee, where there is no evidence that the injury to the latter was caused by collision with any object.

4. If the mere fact that the car upon which the injured employee was engaged at the time of the injury was then off the track creates a presumption of negligence on the part of the company or some of its employees, it seems that such presumption is rebutted where it has been shown positively that the track was in good order, the engine, cars, etc., in good repair, and the train properly manned, and not run at a dangerous speed; and it is then incumbent on the plaintiff to make further proof of negligence on the part of the company.

5. Where a brakeman was injured by being thrown from a moving train while uncoupling the engine and tender, and it appears that he was not required to attempt such uncoupling while the train was in motion, but that the rules of the company forbade such attempt, this is such evidence of contributory negligence on his part as justified a compulsory nonsuit in an action for the injury.

APPEAL from the Circuit Court for *Dane* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought for the purpose of recovering damages of the defendant company for causing the death of C. W. Lockwood by the negligence of said company, its agents, servants and employees. The accident which caused the death of the plaintiff's intestate occurred before the repeal of section 1816, R. S. 1878, which made a railroad corporation liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant, without contributory negligence on his part. The deceased, at the time he received the injury which caused his death, was a brakeman on a freight train

of said company, and had been such for some time previously. The accident which caused his death happened in the city of Madison, near the place where the defendant's track crosses the track of the Chicago, Milwaukee & St. Paul Railway Company, in the east part of said city, at about 10 o'clock of the forenoon, on the 28th day of November, 1878. It appears, from the undisputed evidence in the case, that the train upon which the deceased was employed at the time was not a regular freight train, but was sent out from Harvard Junction to go to Baraboo, in this state; that, as it came near the crossing above mentioned, the deceased, whose place was on the forward part of the train, went down the ladder at the front end of the first car, behind the engine and tender, while the train was in motion, and uncoupled the tender and engine from the train, and before he got back upon the top of the car, and before the train stopped, he fell to the ground on the east or right side of the train; that he was not run over by the wheels of the cars, but was in some way crushed and thrown three or four feet east of the track, and when taken up it was found that his back was broken near the lower extremity thereof; that no other bones were broken and no flesh wounds of a very serious nature found. His clothes were considerably torn, and the sole of the shoe on his right foot showed marks of having been crushed by the wheel of the car. It was also established that the forward trucks of the front car, the one upon which the deceased was at the time he fell, were thrown off the track to the west; that the car ran its length or more after the trucks left the track before the train stopped, and that the body of the deceased lay nearly opposite the front end of the second car when the train stopped. At the place where the accident happened the track curved to the west.

"Exactly what caused the deceased to fall from the car, or in what way his back was broken, is not made clear from

the evidence.    The plaintiff in his original complaint alleged
the occurrence of the injury, and the negligence of the
defendant, its agents, servants and employees, in the follow-
ing language:

"'That at the time the train arrived at said 400-foot post,
the deceased, in the discharge of his duties as brakeman,
*was required to uncouple the same from the said engine, and
for that purpose and in the line of his said employment had
descended* the ladder in front and on the right-hand side of
the first car of said train, and was in a proper position upon
said car to uncouple the same from the engine; that after
said train had passed said 400-foot post a distance of about
100 feet, the said Charles W. Lockwood, deceased, *proceeded,
by the order and direction of the defendant, its agents, officers
and servants, to uncouple the said engine from the said train,
and did properly uncouple said engine from said train as
ordered and directed as aforesaid.*

"'That immediately thereafter, and without signal or warn-
ing, the said engine was recklessly, negligently and carelessly
moved suddenly forward, at the most rapid rate, by the de-
fendant, its agents and servants upon the same, a short dis-
tance in advance of said train; that said cars continued to
move forward with considerable speed and with great force,
and were not brought to a full stop as required by law, by
reason of the unlawful, reckless and rapid rate of speed at
which the same were being run within said city limits, and
by reason of the same not having been brought to a full stop
at said 400-foot post, or at a point 400 feet from said cross-
ing, and by reason of said track being out of repair, and by
reason of worn and defective brakes and machinery for
operating the same on said cars, and by reason of the want
of a sufficient number of competent and skilled brakemen to
operate the same, and by reason of the negligence of other
brakemen in putting on the brakes on said cars, and by rea-
son of negligence and want of skill on the part of the de-

fendant, its agents, servants and employees, the conductor, engineer and other brakemen operating said train in running and managing the same, and without any fault, neglect or omission on the part of the said Charles W. Lockwood, deceased; that the agents, servants and employees of the defendant upon said engine, in order to stop said train of cars before the same should reach or run upon said crossing of the Chicago, Milwaukee & St. Paul Railway, negligently, carelessly and recklessly reversed the motion of said engine, and, without blowing the whistle or ringing the bell, or giving other warning or signal, negligently and carelessly propelled the same backward with great suddenness and rapidity, and at a rate of speed greater than six miles an hour, toward and upon said train of cars, which were then moving at a greater rate than six miles per hour, within said city limits, by reason of the negligence of the defendant, aforesaid; that said engine and said train were by the defendant, its said agents, servants and employees, the said conductor, engineer and brakemen, and without any fault or negligence of the said Charles W. Lockwood, operated and managed so negligently, carelessly and unskilfully, as aforesaid, that said engine collided with said train of cars with great force and violence, and that the front end of the first car next to said engine was badly smashed and broken by the collision with said engine, and was *thereby thrown from the said track to the west or left-hand side thereof; that at the time of said collision said deceased was on said iron ladder provided for the use of brakemen on the front and right-hand side of said car, next to said engine; that by reason of the negligence of the defendant, its agents, servants and employees, the fellow-servants of the said deceased, and without any contributory negligence on his part, the said engine and said train of cars were so carelessly and unskilfully run, operated and managed, as aforesaid, that said engine was propelled against the front end of said car, as aforesaid, before the said deceased could escape*

*therefrom; that the said deceased was struck by said engine, or tender thereof, with such force that he was* thrown between said engine and said car, and was thereby badly crushed, bruised and mangled; that as said car was crowded upon said engine, and the front end thereof forced off the track to the left, as aforesaid, the said deceased was crushed between the said car and said engine, or the tender thereof, and pushed and thrown out on the right-hand side, and hurled to the ground with great force and violence,' etc.

" In the amended complaint he makes the following allegations as to defendant's negligence, and the manner in which the injuries to the deceased occurred: ' That about the time the train arrived at the 400-foot post, the deceased, in discharge of his duty as brakeman upon said train, was required to uncouple the same from the said engine, and for that purpose, and in the line of his said employment, was upon the first car in said train, and on or about the front end thereof; that, in order to stop the said train and cars before they should run over and upon the said crossing of the Chicago, Milwaukee & St. Paul Railway track, *the said engine was negligently and recklessly reversed, and without warning or signal propelled with great force against and upon the said cars which were then running at a rate of speed greater than six miles per hour between said crossing and said 400-foot post aforesaid, and within the said city limits;* that by reason thereof, and by reason of the unlawful, reckless and rapid rate of speed at which the same were being run within said city limits, and by reason of the same not having been brought to a full stop at said post 400 feet distant from said crossing, *and by reason of said track being out of repair, and by reason of worn and defective brakes and machinery for operating the same on said cars, and by reason of the want of a sufficient* number of competent and skilful brakemen to operate the same, and by reason of the negligence of said other brakemen in putting on the brakes on said cars, and by

reason of the negligence and want of skill on the part of the defendant, its agents, servants and employees in operating said road and in running and managing said train, and without the fault, neglect or omission of duty on the part of the said deceased, *the front end of said car next to said engine was thrown from the track and the said deceased was precipitated to the ground with great force and violence;* that by reason of bruises, wounds and injuries then and there received through the negligent acts and omissions of the said defendant, its agents, servants and employees, the fellow-servants of the said deceased, and without any contributory negligence on his part, he, the said deceased, was made sick, sore, lame and disabled, and in consequence thereof he died,' etc. The 400-foot post spoken of in the complaint is the post 400 feet south of the crossing, which is found at that distance from all railroad crossings in this state.

"There were also general allegations in the complaint and the amended complaint that the train was run at an unlawful rate of speed within the city limits and before it came to the said 400-foot post, viz., at the rate of from twelve to fifteen miles per hour."

After the evidence was all in, the court, on defendant's motion, rendered a judgment of nonsuit; and plaintiff appealed.

For the appellant there was a brief by *Bashford & Spilde,* his attorneys, and *I. C. Sloan,* of counsel, and oral argument by *Mr. Bashford* and *Mr. Sloan.* They reviewed the testimony at length, and argued, among other things, that the fact of the accident, under the circumstances of this case, raises a presumption of negligence on the part of the defendant, which it is bound to rebut in order to defeat the action. *Christie v. Griggs,* 2 Camp., 79; *Stokes v. Saltonstall,* 13 Pet., 181; *Curtis v. Railway,* 18 N. Y., 534; *Carpue v. Railway,* 5 Q. B., 747; *Laing v. Colder,* 8 Pa. St., 479; 3 Eng. Railway Cas., 692; 8 Jur., 462; 13 L. J. (Q. B.), 133;

*Holbrook v. Railway,* 16 Barb., 113; *Festal v. Middlesex Railway,* 109 Mass., 398. This rule is elementary. See 2 Greenl. Ev., sec. 222, and cases cited. The law implies negligence under such circumstances, and requires the defendant to prove affirmatively that proper care and skill were exercised. This it does out of regard to both the convenience and the justice of the case — convenience, because the evidence is generally in the possession of the defendant and not in that of the plaintiff; and justice, because the plaintiff should not be required to give evidence as to facts which are known to the defendant and not to him, and which the defendant is interested in withholding from him.

*F. J. Lamb,* as attorney, and *Thomas Wilson,* of counsel, for the respondent, argued, among other things, that the plaintiff has the burden of proof, and must prove the negligence of the defendant. The happening of an accident is not enough, but " there must be proof of well-defined negligence." *Cotton v. Wood,* 8 C. B., N. S. (98 Eng. C. L.), 568; *Baulee v. Railway Co.,* 59 N. Y., 356; *Delaney v. Railway Co.,* 33 Wis., 67; *Kronshage v. Railway Co.,* 45 id., 500; *Steffen v. Railway Co.,* 46 id., 259; Wood on Master and Servant, § 382; *Mich. Cent. Railway Co. v. Austin,* 40 Mich., 247; *Ladd v. Railway Co.,* 119 Mass., 412; *Smith v. Railway Co.,* 69 Mo., 32; *Hayden v. Manuf'g Co.,* 29 Conn., 548; *Skip v. Railway Co.,* 9 Exch., 223; *McGlynn v. Brodie,* 31 Cal., 378; *Lonegrave v. Railway Co.,* 16 C. B., N. S. (111 Eng. C. L.), 692; *Parrot v. Wells,* 15 Wall., 537; Wharton on Neg. (2d ed.), secs. 421, 428.

TAYLOR, J. It will be seen, by an examination of the allegations in the original complaint, that the plaintiff at the time it was made was of the opinion that the deceased was thrown from the car by the sudden backing of the engine and tender after it had been uncoupled from the rest of the train, and after it had run forward from the train some little

distance, and while the deceased was on the ladder returning to the top of, the car after uncoupling the engine and tender. It also alleges that the tender struck the deceased, and threw him between the tender and the car.   In this complaint it is also alleged that the deceased was ordered to uncouple the engine from the cars, and that he uncoupled the same in pursuance of such orders.   In the amended complaint it is not alleged that he was ordered to uncouple the engine and tender from the cars, but that it was in the line of his duty to do so, and for that purpose he was on the front end of the first car; and there is an omission to allege that he did uncouple the same.   It is then alleged that, in order to stop the engine and cars before they ran over or upon the crossing, the engine was recklessly and negligently reversed, without warning or signal, and propelled with great force against and upon the cars, and that by reason thereof the front end of the first car was thrown off the track, and the deceased was precipitated to the ground with great force and violence, etc.

The plaintiff's proofs on the trial failed to show that the reversing of the engine, and the backing of it and the tender against the cars, had any agency in throwing the deceased from the train; and that theory of the case was wholly abandoned by the learned counsel for the appellant upon the argument in this court.   It is not claimed that the proof shows that the car was thrown off the track by the collision of the engine and tender with the car, nor that the deceased was struck by the tender when such collision took place.   It seems to be conceded by both parties that the car was off the track before the engine and tender were reversed, and that the deceased fell from the car before the tender came into collision with it.

The learned counsel for the appellant seek now to sustain the charge of negligence against the defendant, its agents, servants and employees, upon the theory that immediately after the deceased uncoupled the tender and engine, and be-

fore he could regain the top of the car, the forward end of the car ran off the track, and that the jolting of the car, in passing over the ties, threw the deceased from the ladder as he was attempting to return to the top of the car. Although no definite cause is shown which threw the front end of the car from the track, it is claimed that there was evidence from which the jury might have reasonably found that it was because the cars were running at too great a speed at the time, or that there was negligence in the other brakemen or other employees of the road which caused the car to leave the track, or that the track was out of repair.

It is further urged that if there was evidence which tended t o show that the car was off the track before the deceased fell, and that its being off the track caused him to fall, the mere fact that the car was off the track raises a presumption of negligence on the part of the company, its agents, servants or employees, and that the burden of proof to show the absence of such negligence was upon the defendant. It is also urged that there was evidence tending to show that the deceased was ordered by the conductor to descend and uncouple the engine and tender while the train was in motion, and that in executing such order he fell from the car without fault on his part.

On the part of the defendant it is contended, that the only reliable evidence in the case shows that the deceased fell from the car before it was off the track; that his falling off threw the car from the track, and that he fell in attempting to return to the ladder, after uncoupling the engine and tender, and before he got upon the ladder; and that his uncoupling the engine and tender, while the train was in motion, was his voluntary act, done without any order from the conductor or other employee of the company, and in violation of the rules of the defendant company upon that subject. The learned circuit judge took the view of the evidence

taken by the learned counsel for respondent, and nonsuited the plaintiff.

There is no serious attempt made on the part of the learned counsel for the appellant to show that the evidence introduced upon the trial proved any negligence on the part of the defendant in furnishing the train with a competent engineer, conductor and brakemen, or in furnishing a safe and proper track upon which to run said train, nor that the cars were not in good order and well made; but it is insisted that the evidence tends to show that the engineer and conductor were negligent in running the train at too great a speed within the city limits and when it was approaching the crossing in said city, and in not bringing the train to a stop at the 400-foot post south of the crossing; that such rapid speed caused the front end of the first car to leave the track at the curve, when it was uncoupled from the engine, and so caused the deceased to fall from the car upon the track and receive the injuries which resulted in his death. Considerable importance was given to the fact that the train was not brought to a stop when the engine reached the 400-foot post. The learned counsel for the appellant seemed to think that the defendant's servants violated the law in not coming to a full stop at that point. In this we think they are clearly mistaken. The only law upon the subject of stopping trains before crossing the track of another railroad is section 1808, R. S. 1878, which reads as follows: "Every train of cars, and every locomotive, about to cross the track of another railroad, shall come to a full stop before arriving at or crossing the track of such other, and within 400 feet thereof." This section does not require the train to stop when the engine reaches the 400-foot post, but between that post and the track of the railroad about to be crossed. The fact, therefore, that the train did not stop when the engine reached the 400-foot post, was not a violation of any law of the

state; and no negligence can be predicated upon such fact alone.

After a careful examination of the evidence in the case, we can find nothing which tends to prove any actual negligence on the part of the defendant, its agents, servants or employees in respect to the sufficiency and safety of the track of the road where the accident happened, or in respect to the capacity and skill of the parties in charge of the train at the time, or in respect to the sufficiency and safety of the cars, engine, brakes or other appliances connected with the train.

But it is urged by the learned counsel for the appellant, that there is evidence which shows that the train was run at an improper rate of speed, and that the accident may be attributed to that cause. After a careful reading of all the evidence, we are satisfied that the train was not running at such a rapid rate of speed at the time the accident happened as would be likely to cause the cars to leave the track. The place at which the car left the track was on a slight curve, and it is the constant experience that trains will pass with safety over the track at such curves at a very much higher rate of speed than that at which this train was moving at the time. All the proof there is on this subject is, that the track was in good repair at that place, and that a train would pass over it with as much safety as though the track were straight. The witness Sayers, who was a brakeman on the train, and is the only witness who testifies on that subject, says: "There is no rule about slackening speed on such a curve as that. I do not think there is any more danger of a car running off on a small curve like that than on a straight track. I think a train would run about the same in respect to steadiness on a slight curve or a straight track." No jury would be justified in predicating negligence on the part of the railroad company or its employees upon the simple fact that a freight train was run at a speed of eight or even ten

miles an hour on a curve such as there was in the track at the point where this accident happened, when it is the daily and hourly experience that such trains run over such curves at a much higher rate of speed with safety. The evidence showing that the track was in good repair, there is no evidence which would justify a finding that the defendant was negligent, as between itself and its employees in charge of the train, in running its train at the rate of speed it was run, even though run at the highest rate testified to by any of the witnesses. *Maher v. Railroad Co.*, 64 Mo., 267; *Holman v. Railroad Co.*, 62 Mo., 562; *De Graff v. Railroad Co.*, 76 N. Y., 125. It is evident that the statute limiting the rate of speed at which railroad trains are to be run within a city, was a limitation made for the protection of those crossing the streets of such city, and not so much for the protection of the employees on the trains, although it might indirectly be for their protection also. *Ewen v. Railway Co.*, 38 Wis., 633, 634. The employee might allege such violation of the statute as negligence if he could trace his injury to that cause; as, for example, by showing that a collision took place with some object at some street crossing, which threw the train from the track and so caused his injury. But in the case at bar there is no claim that the car was thrown from the track by any object thereon which would probably have been avoided had it been running at a less speed. That the car was off the track is not in any way connected with excessive speed, and such speed cannot, therefore, be assigned as a cause of the injury.

The only possible theory which would justify a verdict in favor of the plaintiff is, that there was evidence tending to show that the car was in fact off the track, and that its being off the track caused the deceased to fall from the car and receive the injuries which resulted in his death.

It is argued that if there was evidence which would justify a jury in finding that the car went off the track before

the deceased fell from it, and that its being so off the track caused his fall, then it was error in the circuit court to direct a nonsuit; that the plaintiff having shown the car off the track, and its being off causing the injury to the deceased, in the absence of any other testimony a presumption arises that the car went off through the negligence of the company, its agents, servants or employees; and upon such presumption the plaintiff would be entitled to recover, unless there was clear and positive evidence that there was in fact no negligence on the part of the company or its other agents. That this is the rule applicable to railroad companies as between them and passengers carried by them, there cannot be any serious doubt; and it is urged by the learned counsel for the appellant that the same rule is applicable to the case of an employee and the company. We are not prepared to settle this question definitely in the decision in this case, but content ourselves with the remark that it is well settled that the same degree of care is not, as a general rule, required of the company in respect to its employees as is required in respect to its passengers, and that a presumption of negligence of the company in favor of a passenger might arise under circumstances which would not raise such presumption in favor of an employee.

But suppose a presumption of negligence does arise from the fact that the car was off the track, which presumption it was necessary to rebut by proofs, is not the presumption rebutted when the proof shows that the track was in good order, that the engine, cars, brakes and other appliances were in good repair, and that the train was properly manned, and was not run at a speed which was likely to endanger the safety of the train, or run it off the track? What other proof could be made to rebut such presumption of negligence? Remembering that, as between the company and its employee, the company is only bound to use ordinary care and not the highest degree of care, as between itself and

its passengers, it would seem that the proof of such facts would rebut conclusively mere legal *prima facie* evidence of negligence, arising from the fact that the car was off the track, and that, in order to justify a finding for the plaintiff, he would be compelled to make further proof of actual negligence on the part of the company. This seems to have been the conclusion which the court arrived at in the case of *Spaulding v. Railway Co.*, 33 Wis., 582, and 30 Wis., 110.

On the plaintiff's evidence there is no fact shown which will, under any reasonable view of the case, account for the car leaving the track; but the evidence of the defendant, and its theory of the case, does show a sufficient cause. If the car was on the track when the deceased fell, his falling before the wheels of the car shows an adequate cause for its leaving the track.

An adequate cause having been shown for throwing the car from the track, and there being no other cause shown, that must be presumed to be the true cause. *Kendall v. Boston*, 118 Mass., 234, 236. This was an action to recover against the city for an injury received by the plaintiff while in the Boston Music Hall, by the falling of a statue or bust. The only evidence given by the plaintiff, after showing the ownership of the hall, and that she was lawfully present at an assembly therein, was that when the audience arose the bust or statue fell, and she was injured. She was seated immediately under the bust, which was attached or placed on the outside of the balcony above. The plaintiff was nonsuited, and the nonsuit was sustained by the supreme court. In the opinion the court says: "In the present case it is not shown whether the balcony was or was not occupied by the audience; whether those comprising the audience or others did or did not rightfully have access to the place where the bust was put, and thus whether the fall may not have been occasioned by the wrongful or negligent act of some third person. It is not sufficient for the plaintiff to

Lockwood, Adm'r, vs. The Chicago & Northwestern R'y Co.

show that the injury may have been occasioned by the negligence of those whom she seeks to charge with it. If there were other causes which also might have produced it, she is .in some way to show that these did not operate. Without some evidence as to the manner in which the bust was attached or secured, its fall alone did not furnish sufficient evidence of negligence."

In the case at bar, the evidence on the part of the plaintiff does not tend to show any adequate cause for the car being off the track, and if it was off, as is claimed, before the deceased fell, its being off is left wholly unaccounted for; and if that fact alone raises any presumption of negligence on the part of the defendant in an action of this kind, it makes out a mere *prima facie* case, which is overthrown and the burden of proof shifts when the defendant shows that the track, cars, engine, brakes and other appliances were in good condition, and the train properly manned and not run at a dangerous speed. If the accident arises from some cause which cannot be shown, the plaintiff fails to make out a case. *Steffen v. Railway Co.*, 46 Wis., 259; *De Graff v. Railroad Co.*, 76 N. Y., 125, 131. Under the evidence in this case, even if it be admitted that the car was off the track when the deceased fell, the burden of proof was upon the plaintiff to show that the negligence of the defendant caused it to leave the track. He could not rest upon proof of the simple fact that it was off.

But upon the question of fact, whether the car was off the track before the deceased fell, we think the great preponderance of the evidence which is reliable and worthy of credit is against that theory of the case. The presumption that it was so off the track is not sustained by any fact proved. If it was, no cause is shown why it was. The fact, if it be a fact, is inexplicable; whereas the fact that the car went off the track after the deceased fell, is rationally accounted for. It is unnecessary to analyze or comment upon the testimony

upon this question, as in either view of the case we think the whole evidence failed to show any negligence on the part of the defendant, and because we think there is another fatal objection to the plaintiff's right to recover. If the car was off the track when the deceased fell, and he fell by reason of the jolting of the car in running over the ties, then his own negligence contributed to his fall. He was clearly negligent in undertaking to uncouple the cars while they were in motion. The fact that he did so is undisputed, and his doing so placed him in a most dangerous position if the car went off the track while he was so engaged, or before he reached his place on top of the car. The evidence clearly shows that it was not his duty to uncouple the cars while they were in motion, and that his doing so was against the established rules of the company. The rules prohibited it because it is a dangerous thing to do. If he voluntarily placed himself in a dangerous position, not required of him by the rules of the company or by the order of some superior officer or employee of the company, and was injured while in such position, even though the negligence of the defendant was one cause of the injury, he cannot recover, because his placing himself in such dangerous position was also negligence on his part and contributed to the injury. Had he been in the discharge of his duty on top of the car and at the brake at the time, there is no presumption that he would have been injured, even though the car left the track. *Fitch v. Allen,* 98 Mass., 572; *Sprong v. Railroad Co.,* 60 Barb., 30; *Gibson v. Railway Co.,* 63 N. Y., 449; Whart. on Neg., § 215; 2 Thomp. on Neg., 1151, note 3, and cases cited; *Pitzner v. Shinnick,* 39 Wis., 129; *Cremer v. Town of Portland,* 36 Wis., 92; *Prideaux v. Mineral Point,* 43 Wis., 513; *Delaney v. Railway Co.,* 33 Wis., 67; *Curry v. Railway Co.,* 43 Wis., 665; *Freeman v. Transp. Co.,* 36 Wis., 571; *Cunningham v. Lyness,* 22 Wis., 245; *Nicks v. Town of Marshall,* 24 Wis., 139; *Potter v. Railway Co.,* 21 Wis., 372; *Kearney v. Railway Co.,* 47

Wis., 144; *Otis v. Town of Janesville*, 47 Wis., 422; *Gold-stein v. Railway Co.*, 46 Wis., 404. These cases clearly show that deceased's negligence in uncoupling the cars when in motion was contributory to and a proximate cause of the accident, and must defeat the action. The claim that the deceased was ordered by the conductor to uncouple the cars before they came to a stop is wholly unsupported by the evidence. It is evident, from the pleadings on the part of the plaintiff, that the action was commenced under a mistake of the facts; and the attempt to maintain it upon the real facts as shown upon the trial cannot be sustained upon any well settled rule of law.

*By the Court.*— The judgment of the circuit court is affirmed.