89 420
90 265
89 420
94 387
89 420
96 706
98 212
98 219
89 420
e117 674
89 420
e127 24
89 420
e129 363
89 420
131 28
89 420
f138 276
89 420
144 341

## LUELLA B. LOWE, Administratrix, Appellee, v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY Company.

1. **Appeal:** ERROR WITHOUT PREJUDICE: INSTRUCTIONS TO JURY. The fact that the statement of the issues in a court's charge to the jury might properly have been made more specific, is not ground for the reversal of a judgment on appeal, where it appears that the appellant has not been prejudiced by reason of such error.

2. **Personal Injury:** CONTRIBUTORY NEGLIGENCE: RULES OF RAILROAD COMPANY: WAIVER. As the plaintiff's intestate, a brakeman on the defendant railroad, in the performance of his duty, stepped onto a railroad track between slowly moving freight cars, for the purpose of uncoupling them, the engineer, without orders, gave the cars a "kick," and the plaintiff's intestate was thrown under the wheels and killed. A rule of the defendant declared that "getting in between cars in motion to uncouple them" was in violation of duty, and was strictly prohibited. *Held*, that evidence that it was the custom of brakemen on the defendant's road to go onto the track, and between cars, when in motion, for the purpose of coupling and uncoupling them, was properly admitted for the purpose of showing a waiver of the above rule by the defendant, as alleged by the plaintiff, and that such practice, being open and notorious, and having existed for some time, the defendant's officers would be presumed to have notice of it.

3. **Master and Servant:** UNDISCLOSED INTENTION OF EMPLOYER: EVIDENCE. Evidence of the intention of the conductor of the freight train, in such a case, as to whether the deceased should uncouple the car in question, and what he proposed to have done in relation to such car, uncommunicated to the deceased, is not admissible.

4. **Railroads:** INJURY TO BRAKEMAN: CONTRIBUTORY NEGLIGENCE: EVIDENCE. The conductor of the train, on which the plaintiff's intestate was employed as brakeman, had received a telegram before reaching the station where the accident in question occurred, to set out the car uncoupled by the deceased, and, after reading the same, said to the brakemen, "we will set out that head stock car." It was not the special duty of any particular member of the train crew to place cars on the side track, but upon the arrival of the train at the station the conductor and two of the brakemen proceeded to unload freight, and the deceased, without special orders, proceeded with the engineer to set out the car in question, that car with five others being

uncoupled from the train for that purpose. After the switch had been thrown, and the signal given to back, but while the cars were moving slowly, the deceased went between the cars to uncouple the stock car. He might have uncoupled the car before he threw the switch, or after they had passed upon the side track, and in either case the cars would not have been moving, but that was not the usual way of doing, and would have required more time, and, under the rules of the company, there was but nine minutes' time, after the arrival of the train at the station, in which to unload freight, set out the stock car on the side track, return with the engine to the main track, and side track the train, so as to leave the main track clear for the passenger train. *Held*, that the finding of the jury, that the deceased was not guilty of negligence contributing to his injuries was supported by the evidence.

5. ————: NEGLIGENCE: EVIDENCE. Although at the time of the accident the train was under the orders of the deceased, the evidence showed that the engineer, knowing that the deceased was between the cars, without orders, and without warning, gave the cars a "kick." *Held*, that the defendant's negligence was established.

6. ————: ————: INJURY CAUSING DEATH: MEASURE OF DAMAGES. The measure of damages recoverable in such case, is the pecuniary loss to the estate of the deceased, caused by his death, in view of his age, occupation, the wages he was receiving, his condition of health, and his ability, if any, to earn money. The recovery is not limited to such sum as, placed at legal interest for the time of the deceased's expectancy of life, would produce the amount he would have accumulated over and above his liabilities at his death, had he lived out his expectancy of life.

7. ————: ————: ————: DAMAGES: VERDICT. A verdict of five thousand dollars for the negligent killing of a brakeman on a freight train, who at the time was twenty-five years of age, in good health, and earning fifty-five dollars a month, all of which sum was consumed in the support of himself and family, is not excessive.

*Appeal from Osceola District Court.*—HON. SCOTT M. LADD, Judge.

MONDAY, OCTOBER 16, 1893.

ACTION to recover damages for a personal injury. From a verdict and judgment for the plaintiff, the defendant appeals.—*Affirmed.*

*Swan, Lawrence & Swan,* for appellant.

*Argo, McDuffie & Argo,* for appellee.

KINNE, J.—The plaintiff's claim, as set forth in her petition is substantially this:    That she is the administratrix of the estate of one Channing Lowe, deceased; that the defendant was, on and prior to November 14, 1891, operating a line of railroad through the town of Ashton, in this state, at which point it had a main line and certain switches and side tracks; that at that time and place it was frequently the custom and practice of the defendant, when its trains were behind time, and it desired to detach certain of its cars from those in use on the main line and place them on a side track, to order, direct and require certain of its servants acting as brakemen to open one of the switches connecting with its main line, and then, while said cars and engine were in motion, to step upon its track between the cars to be detached, and uncouple them; that when the cars were being uncoupled it was then and there the duty as well as the custom and practice of the defendant and its servants controlling the movement of the engine and cars to move said train backward very slowly, and at a steady and regular rate of speed, and not to increase the rate of speed at which the cars were being moved, and not to "kick" the cars backward, until the servant of defendant had signaled the defendant's servants in charge of the engine that he had performed the act of uncoupling the cars, and to "kick" the uncoupled cars backward onto the switch; that on or about November 14, 1891, the defendant employed Channing Lowe as a brakeman, and employed other servants to care for, manage and control its trains and engines, and instructed Lowe to work under their direction, and to obey their orders, and so he undertook to do; that at Ashton, while in the employ of the defendant, and acting in the line of duty, as aforesaid, Lowe was directed and ordered to open and place the switch at the north end of the side track on the west side of the main line, and to uncouple from said train, while

in motion, certain cars which the defendant had ordered
to be placed upon said side tracks; that Lowe in obedi-
ence to said direction and order, opened the switch,
and as said train was being slowly and at a regular rate
of speed backed over said switch, he, in the exercise
of due care and caution, stepped onto the track between
the cars for the purpose of uncoupling them; that the
servants in charge of said train, without waiting for
Lowe to uncouple said cars, or to step off from the track,
to give said signal, and without giving him time to do
so, and without waiting for signal, and without signal,
carelessly, negligently, and without warning, greatly
and suddenly increased the speed of the train; that by
reason thereof, and while in the performance of his
duty, and while in the exercise of due care and caution,
and without negligence on his part, he was struck and
killed by the defendant's cars.

The defendant admits its corporate capacity, and
that it was at the time stated operating its railway as
alleged, and denies all other allegations.  In a second
count the defendant avers, that the killing of Lowe was
not the result of any negligence on its part, or of its ser-
vants or employees, but was the result of, and occasion-
ed by, the careless and negligent acts of the deceased.
That the deceased was at the time of the injury directing
the movement of the train, and said train was moved
and controlled by his direction only, and in no other
or different manner; that the deceased, with knowledge
that the train was in motion, and of what was being
done, and to be done, with the engine and cars, carelessly
and negligently went in between the cars when they
were in motion, and voluntarily placed himself in a
dangerous place with full knowledge of the danger
incurred, whereby he was injured.  In a third count it
is averred, that Lowe had for a long time prior to his
death been in the employ of the defendant's as a brake-
man, and had full knowledge of the manner of doing

the work on defendant's road, and of the rules and regulations governing his duties as such brakeman, and of the practice, customs and manner of doing said work, and remained in such employment without protest or demand for any change of manner of doing the same, and thereby voluntarily assumed the risk and danger incident to said employment. In a fourth count it is alleged, that the accident to Lowe was occasioned by his disobedience of the rules and regulations of the defendant company; that said company had on January 1, 1890, made and published rules prohibiting brakemen from going between cars in motion to uncouple them, and that deceased had a copy of said rules, and that by reason of his disobedience thereof he was killed. So much of the rules as are material in this case are as follows:

"The attention of switchmen and brakemen and all other employees of the company, whose duty it is to couple cars, is called to the following rule of the company:

"'Rule 15. Great care must be exercised by all persons when coupling cars. * * * All persons entering into or remaining in the service of the company are warned that the business is hazardous, and that they must assume the ordinary risks attending it. Each employee is expected and required to look after, and be responsible for, his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars and in all movements of trains. * * * Getting in between cars in motion to uncouple them, and all similar acts, are dangerous, and in violation of duty, and are strictly prohibited. Employees are warned that if they commit them it will be at their own peril and risk.' "

The plaintiff denied the allegations in the third and fourth counts of the answer, and, further replying, said that, notwithstanding the rules of the defend-

ant company, the defendant and its officers and serv-
ants in charge of its trains have required and directed
the decedent to perform the services mentioned in the
petition, and in the manner therein stated. That at
the time the plaintiff's intestate received the injuries
complained of it was impossible to operate and run the
defendant's trains in conformity to said rules, and per-
form the train service required of its servants in opera-
ting its trains, which was then known to the defendant,
and the defendant has thereby waived the observance
of said rules on part of the plaintiff's decedent. That
the decedent received his orders to set out on the side
track the car mentioned in the petition from an officer
of the defendant company by means of a telegram
received by the conductor in charge of the train, and
which was read in the presence and hearing of the
deceased.

I. It is said that the court erred in not stating
the issues fully and correctly to the jury. It is con-
tended that the court ignored the second

1. APPEAL: error
without preju-
dice: instruc-
tions to jury.

and third defenses pleaded in the answer.
We do not think the claim is well founded.
True, the court might have stated the defenses more
fully, and it would have been proper to have done so.
The court told the jury that the defendant claimed that
the negligence of the deceased caused the injury, but did
not refer to the facts pleaded upon which said claim of
negligence was based. We do not think that the
failure of the court to be more specific worked any
prejudice to the defendant.

II. Evidence was admitted, over the defendant's
objection, to the effect that it was the habit or custom

2. PERSONAL in-
jury: contrib-
utory negli-
gence: rules
of railroad
company:
waiver.

of brakemen on the defendant's road to
go onto the track and between the cars,
when in motion, for the purpose of coup-
ling and uncoupling them. It is urged
that the evidence was immaterial, incom-

petent, and that there was no such issue. The evidence was admissible, as tending to show a waiver of rule 15, which prohibited brakemen from going between the moving cars to couple or uncouple. The contention is that the evidence did not as a matter of law establish a waiver of the rule; that, as the deceased had a copy of the rule, he was in duty bound to do the work in accordance therewith; and the fact that other employees disobeyed it was no excuse for the plaintiff's decedent to do so.

That railroad companies have the right to make and promulgate proper and reasonable rules for the government of their employees in the transaction of the business intrusted to them is well settled, and it is likely there might be cases where they would be derelict in duty if they failed to establish such rules. *Deeds v. Chi., R. I. & P. Railroad Co.*, 74 Iowa, 154; *Cooper v. Central Railroad Co.*, 44 Iowa, 134, 138; *O'Neill v. Keokuk & D. M. Railroad Co.*, 45 Iowa, 546, 547; *Pittsburg, Ft. W. & Chi. Railroad Co. v. Powers*, 74 Ill. 341, 344; *Lockwood v. C. & N. Y. Railroad Co.*, 55 Wis. 50, 12 N. W. Rep. 401; *Reed v. Bur., C. R. & N. Railroad Co.*, 72 Iowa, 166; *Pennsylvania Co. v. Whitcomb*, 111 Ind. 212, 12 N. E. Rep. 380; *Sedgwick v. Illinois Cent. R'y Co.*, 73 Iowa, 158; Beach on Contributory Negligence, section 141. A rule prohibiting the coupling and uncoupling of cars by going in between them while they are in motion is reasonable, and, if enforced, is calculated to protect the limbs and lives of those whose duty it is to perform the always dangerous work of coupling or uncoupling cars. But we can not doubt that such a rule may, by the consent of the parties, be waived or abrogated. Let it be conceded that by receiving a copy of the rules and entering the company's service the deceased became bound by contract, and under obligations to obey the rules given him, nevertheless the parties to the contract

were competent to waive the performance of any part of it. Such a waiver may arise from constant violations of the rule or contract, acquiesced in by the defendant company.

There is a conflict in the cases, some of them holding that a usage or custom can not be shown as against a rule or contract like that under consideration; but we think it is clear that it is competent to show a usage or custom on the part of the employees of defendant at variance with, and in violation of, such a rule, when the defendant has, through its proper officers, knowledge of its violation, and their conduct shows that they acquiesced in such violation. The following authorities support this view: *Northern Pacific Railroad Co. v. Nickels,* 1. C. C. A. 625, 50 Fed. Rep. 718; *Union Pacific Railway Co. v. Springsteen,* 21 Pac. Rep. (Kan.) 774, 776; *Prather v. Richmond & D. R. Railroad Co.,* 9 S. E. Rep. (Ga.) 530; *Hissong v. Richmond & D. R. Railroad Co.,* 8 S. Rep. (Ala.) 776, 777; *Bonner v. Beam,* 15 S. W. Rep. (Tex. Sup.) 798, 799. Nor need it appear that the officers of the defendant, who are charged with the enforcement of its rules, had actual knowledge of the custom of the defendant's employees as to violating the rule. Such notice or knowledge may be inferred from circumstances; it may be implied from the notoriety of the custom, whereby they are chargeable with notice. Lawson, Usages & Custom, section 21; *Barry v. Hannibal & St. J. Railroad Co.,* 11 S. W. Rep. (Mo. Sup.) 309.

The evidence satisfies us that it was the custom of the defendant's employees to couple and uncouple cars while in motion; that this practice was open and notorious, and had existed for such a length of time as that the defendant's officers were chargeable with notice of it. It does not appear that those officers of the defendant whose duty it was to make rules, and who may, therefore, be presumed to be especially

responsible for their faithful observance by those under their control, have done anything to cause their enforcement. If rules are made in good faith, and for the protection of the company's employees, that protection can be best obtained by compelling their observance while the party is alive for whose benefit they are made. The defendant can not shield itself from liability by relying upon a rule which, under the evidence, it should know has been constantly violated, and where it may be properly assumed that it acquiesced therein.

III. The defendant asked one Maynard, who was the conductor of the train which killed the decedent, these questions:

"Was it your intention, as conductor and manager of that train, that Mr. Lowe should uncouple those cars, and go up there to set out that car at the time when he did so?" "Now, for the purpose of setting out the car which you had instructions to leave at Ashton, and for clearing the main line for the passing of the passenger train, what movements of your train did you propose to have done to accomplish that purpose at the time?"

3. Master and servant: undisclosed intention of employer: evidence.

This evidence was inadmissible. Both questions called for an expression of the undisclosed intention of the conductor with reference to the setting out of the car. There is no pretense that the intention of the conductor in that respect was ever communicated by him to the decedent, or to anyone else, prior to the accident. Lowe could not be charged with the violation of an order conceived in the mind of his superior officer, but never communicated to him. The order to set out the car was in the form of a telegraphic message to the conductor. It was read by him to and in the presence of the brakemen. No express direction was given to Lowe to attend to setting out the car, but he

undertook to do the work. What the conductor intended to do with reference to setting out the car must be determined from what he said and did; further than that it is impossible to go. To admit evidence of unexpressed intentions in such a case would be entering a field not warranted by reason or authority.

IV. Regardless of the rule heretofore spoken of, it is said that the plaintiff should not recover, because 4. RAILROADS: the decedent's negligence contributed injury to brakeman: directly to produce the injury complained contributory negligence: of. We have seen that the jury were evidence. warranted in finding that the rule prohibiting brakemen from going between the moving cars to couple or uncouple them was waived. It is clear that they so found, as the court instructed them that, if the rule had not been waived, the plaintiff could not recover.

The claim of the appellant is, that the act of the decedent in going in between the moving cars to uncouple them was negligent as a matter of law. Now, going in between moving cars to couple or uncouple them is not necessarily a negligent act. Whether such an act constitutes negligence is to be determined from all the facts and circumstances surrounding its execution. *Henry v. Sioux City & P. Railway Co.*, 75 Iowa, 84, 86; *Beems v. C., R. I. & P. Railroad Co.*, 58 Iowa, 150.

The question of the decedent's negligence was fairly submitted to the jury. They must have found that he was not guilty of any negligence which contributed to produce the accident, otherwise their verdict would have been for the defendant. Now, it appears that no direction was given to Lowe to set out the car at Ashton. The conductor had, before the train reached Ashton, received the message ordering the car set out, and had read it to the brakemen. When he read it he said to them, "We will set out that head stock car."

No other or further order was given as to setting out the car. When the train arrived at Ashton the conductor and two of the brakemen proceeded to unload freight, and Lowe informed the engineer of the order to set out the car. He then cut off the stock car and signaled the engineer to go ahead. Fourteen or fifteen cars were left standing on the main track and six cars were cut off with the engine. Lowe went over to the switch, and gave the engineer a signal to stop. The train stopped. Lowe threw the switch and gave the signal to back up. He then went in between the cars to uncouple the stock car. The cars were at first backed up slowly, and then, without any further signal from Lowe, the engineer gave the cars a "kick," and soon thereafter Lowe's body was discovered under the moving cars.

From the evidence it does not appear that it was the special duty of any particular member of the train crew to place cars upon the side track. Sometimes that work was performed by the conductor and a brakeman, sometimes by two brakemen. Lowe, in connection with the engineer, undertook to carry out the order in accordance with the telegram read to the brakemen by the conductor. It is certain that in so doing he was not a mere volunteer, but a servant of the defendant, performing an act within the line of his employment and duty. He might have uncoupled the cars before he threw the switch, or after they had passed upon the side track, and in either case the cars would not have been moving; but the evidence shows that that was not the usual way of doing. He proceeded in the manner usual and customary with the defendant's employees. It appears also that to have uncoupled before throwing the switch, or after the cars had passed upon the side track, would have required more time than to uncouple while the cars were in motion. The evidence shows that when Lowe passed in between the cars to uncouple

they were moving about as fast as a man would walk, and that the kick was given, and speèd rapidly increased, without any orders from Lowe.  It also appears that there was a rule of the defendant company, known to all its employees, forbidding any freight train from occupying the main track within ten minutes of the time when a passenger train was due.  There was only nine minutes after the freight train arrived at Ashton in which to unload its freight, set out the stock car on the side track, return with the engine and cars to the main track, and place the freight on the side track. The freight train was late.  It was of the utmost importance that it be moved from the main track to make way for the passenger train, which was due in nineteen minutes after the arrival of the freight at Ashton.  It must be presumed that Lowe acted with knowledge of the rule, and realized the necessity of prompt action, in order that the work might all be accomplished within the nine minutes.

In view of these and other facts which might be stated, it was for the jury to say whether Lowe was negligent in attempting to uncouple the cars by going in between them while they were moving.  They have said that he was not guilty of negligence in so doing, and we think they were warranted in so finding, under all the facts and circumstances in evidence.  The question of Lowe's negligence was one of fact to be determined by the jury.  *Whitsett v. C., R. I. & P. R'y Co.*, 67 Iowa, 150, 158; *Tabler v. Hannibal & St. J. R'y Co.*, 93 Mo. 79, 5 S. W. Rep. 810; *Baldwin v. St. L., K. & N. W. R'y Co.*, 72 Iowa, 45.

V.  Was the defendant negligent in suddenly increasing the speed of the train after Lowe had gone 5. ——: negligence: evidence. in between the cars for the purpose of uncoupling them?  This question was fairly submitted to the jury, and they found against the defendant.  If the declarations of the engineer were

properly received in evidence, and that they were is not questioned in the appellant's argument, the jury were justified in their finding. One Ragan testified to statements made by the engineer, as follows:

"Well, as we were walking along, as I said, he overtook me going up, and I didn't know at that time that he was the engineer, until we spoke to each other, and I asked him if the man was killed, and he says 'he was.' And I says, 'How did it happen?' He says to me: 'I was looking out of the cab window, the east cab window, and the fireman was looking on the west side, and he said the man was on the west side.' He says to the fireman, 'What is he saying?' and he answered him, he said, 'He is not saying anything.' At the same time he held up his hand and made a motion that way, holding the hand up and shaking it sidewise. I didn't know what it meant. 'I don't know what he says,' he said. 'I think he wants a little kick; give him a little kick?' and he says, 'I gave it to him.' Those words he used exactly. Question. Who made the gesture that you refer to? Answer. The engineer, as I supposed he was the engineer. I took it by that, from what he said."

These statements were made by the engineer to the witness immediately after the accident happened, and prior to the taking of Lowe's body out from under the train. From the evidence it is clear that the jury were warranted in finding the defendant's negligence was established. The train was under Lowe's orders when the car was being set out. The fireman knew that Lowe was in between the cars. He knew he had given no order to increase the speed of the train, and recklessly, and without any warning, and without regard to Lowe's safety, the cars were kicked and the speed increased. It was an act of gross negligence, uncalled for, and without justification. Whether this act was the cause of Lowe's death is a question, we

think, not free from doubt; but the verdict is not so wanting in support by the testimony as to warrant us in disturbing it.

VI.  It is urged that the damages are excessive, and not warranted by the evidence.  The verdict was for five thousand dollars.  The court instructed the jury as follows:

"Paragraph 7.  If you find for the plaintiff, then you will determine from all of the evidence before you what amount you will allow her as damages resulting to the estate of the deceased by reason of his death; and in determining what amount you will so allow, you should take into consideration the age of the deceased, his occupation, the wages he was receiving, the condition of his health, his ability, if any, to earn money, and all these, in connection with all of the evidence before you, and determine therefrom the probable pecuniary loss to the estate of the deceased, caused by his death, and allow the plaintiff such sum, and such only, as will compensate the estate for such loss."

*6. ——: ——: injury causing death: measure of damages.*

The instruction is not objectionable, nor was it error to refuse the one asked by the defendant.  The instruction asked lays down the doctrine that, to determine the loss the decedent's estate has sustained, the jury must ascertain from the evidence the amount he "would accumulate and have over and above his liabilities at his death, if he had lived the allotted time, as shown by the evidence to be his expectancy of life, and then allow such a sum as, placed at legal interest for that time, would produce a like sum."

VII.  The evidence showed that the deceased was in good health, twenty-five years old, and was at the time of his death earning fifty-five dollars per month; that he left a wife and three children; that he had been braking for five years;

*7. ——: ——: ——: damages: verdict.*

that his family depended entirely upon him for support; that he left no estate; that it took all his wages to support his family. It is impossible to measure with any degree of exactness just what the actual pecuniary loss in such a case is. We are not disposed to measure the damages in such cases by an ironclad rule, nor are we inclined to take a step in advance of what we have heretofore held. We think the rule as repeatedly approved by this court is fair and just. We need not review our decisions touching this question. That was done to some extent in the recent case of *Wheelan v. Chi., M. & St. P. R'y Co.*, 85 Iowa, 167, wherein the appellant urged that an instruction was erroneous for substantially the same reasons now pressed. The instruction given is, in substance, the same as many that have heretofore met the approval of this court, and we are not justified in holding that the court below erred in refusing to give one more definite so long as the one given is correct. The damages were not excessive.

The judgment below is AFFIRMED.