ALEXANDER GOULIN v. THE CANADA SOUTHERN BRIDGE COMPANY.

*Negligence—Injury from coupling cars—Directing verdict.*

In this case the action of the circuit judge in directing a verdict for defendant on account of the *negligence* of plaintiff is sustained. For facts see opinion.

Error to Wayne. (Jennison, J.) Argued November 11, 1886. Decided January 13, 1887.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*C. J. Reilly*, for appellant.

*Henry Russel*, for defendant.

Morse, J. In this case the court below directed a verdict for the defendant, and the sole issue in this Court stands upon the correctness of this ruling.

The plaintiff lives in Trenton, and, at the time of his injury, was 30 years of age. He had worked in the stock-yards at Grosse Isle for the defendant about a year. His duty there was to unload stock from the cars, feed them, and reload them. The switchmen, with a pony engine, would bring the cars containing the stock to him. He had worked also at the same business in the stock-yards in the city of Detroit. He had been employed in all about two years. The stock-yards were in the railroad yards of the defendant.

On the twelfth day of November, 1882, he was set to work by an agent of defendant as second switchman in making up trains in the yard, shifting cars with a pony engine in the railroad yard at Grosse Isle. He had no experience in switching at the time of this employment. The yard-master hired him on Saturday evening, and told him he would show him how to do the work. He did show him the next day, but said nothing to him about a defective draw-head in the engine, which plaintiff claims was the cause of the injury. The front draw-head of the engine was a perfect one, but the one at the rear was defective. It was a double draw-head, but the division between the upper and lower openings had a V or wedge-shaped piece broken out, so that upon a casual glance it looked like a single opening.

The plaintiff went to work with this engine on Monday, November 13, and did day duty that week.

This engine had no tender attached, and no cow-catcher.

It was used in pulling cars in the yard, and would be coupled to them at both ends. The two divisions in the draw-heads were used to meet the heights of different cars without crooked links.

Plaintiff's day duty consisted in following this engine, and doing as he was ordered in opening and shutting switches or coupling cars. The cars were mostly coupled, however, by the head switchman, known as the conductor.

During such day duty plaintiff testifies that he coupled cars in front,—on the front part of the engine,—but made no coupling at the rear end, where this defective draw-head was situated. He had never examined that draw-head, and did not know that it was defective; supposed it to be all right.

On the night of November 19, 1882, he was switching in the yard. About 11 o'clock the yard-master directed him to go to switch No. 1 and draw out a car. He went, and, in coupling the car to the rear end of the engine, got his hand caught in this defective opening, or break in the division between the two openings, and crushed, losing three fingers, and otherwise maiming the hand.

He says he stood upon the tail-board or foot-board of the engine. He had a lantern in one hand, had set the pin up in the draw-bar, and signaled the engine to back. As the car came up, without looking at the draw-head particularly, he undertook to enter the link. He claims it caught in this broken wedge-shaped place. The force of the engine twisted it sideways, and caught his hand. He had never before looked at the end of this draw-bar; and, when he endeavored to make the coupling, says: "I didn't look at the draw-bar. I supposed it was all right."

"Q. If you had looked for it, you could have seen it?

"A. I couldn't see it from the step. You couldn't have seen it unless you had looked right into the draw-bar.    *    *

"Q. You say you had every reason to suppose that the draw-head was all right?

"*A.* Yes, sir.

"*Q.* So you didn't care to see for yourself?

"*A.* No, sir.

"*Q.* Then you gave the signal to move back?

"*A.* Yes, sir.

"*Q.* If you had had an opinion that there was a break in that draw-head, you might have made the coupling, and not been hurt?

"*A.* Yes, sir; if I had known about it, I would have looked out for it."

On redirect he further testified:

"*Q.* You could have made this coupling without any accident if you had known of the break?

"*A.* If I had known of it,—that there was danger,—I should have looked out for it,—if I had known it was broke."

Plaintiff also testified that he could not look into the draw-bar from where he stood when coupling, and that this was the first time he had attempted a coupling at this end of the engine.

John Dougherty, a witness for the plaintiff, testified that he was employed in the yard at the time of the injury to the plaintiff, and was familiar with this engine and draw-bar, and that the yard-master and conductor knew it was broken; that witness knew it was broken a month before the accident. On cross-examination he said the break could be seen as one looked at the draw-head; that he and others used it, and, by taking care of it, it worked all right.

The plaintiff, being recalled, further testified as follows:

"*Q.* I think you testified yesterday, in answer to Mr. Russel's question, that you might have observed this break in the draw-head under some circumstances. Now, will you state whether you desire to explain more fully in reference to that answer you gave?

[Objected to by defendant's counsel.]

"*Q.* Will you state about your ability to see that break?

"*A.* If I could have seen it, I might not have noticed it.

"*Q.* Why not?

"*A.* For I might not have known but what it was a per-

64 Mich.—13.

fect draw-head; for there is a draw-head with one hole, and one with two; and I might not have known but what it was a perfect draw-head.

"*Q.* In the condition that draw-head was at the time you made that coupling, will you state whether or not it was extremely dangerous?

"*A.* It was, by what I heard by the railroad men afterwards. They said it was dangerous.

"*Q.* Will you state whether or not a casual glance at that draw-head would have disclosed its defect to you?

"*A.* Yes, sir; it would.

"*Q.* I don't think you understand my question. You have just stated that you probably would not have observed the break in the draw-head, inasmuch as you are not familiar with draw-heads?

"*A.* Yes, sir.

"*Q.* Now, will you state whether or not it would have been necessary for you to have made a close inspection of the draw-head in order to have discovered its defects?

"*A.* It would have been if I could not see it. The slot was inside of the draw-head,—broken clear inside of the draw-head. It was hollowed off in the back part,—open holes.

"*Q.* As I understand your answer, this apartment in the draw-head, making a distinct compartment, was so broken out that if you had merely looked at it you might have supposed it was a perfect draw-head with one opening only?

"*A.* Yes, sir."

The plaintiff offered to prove, by additional witnesses, that the engineer and conductor of the pony engine and the yard-master had knowledge of this defect in the draw-head; that the draw-bar was not changed before this accident because the defendant had none to put in its place; he also offered to prove the pecuniary damage suffered by him on account of said injury,—all of which testimony it was conceded could be given; but, granting it, the court held that the plaintiff was not entitled to recover, and therefore declined to receive it. The circuit judge thereupon ordered a verdict for the defendant.

The court below was right in this direction. The plaintiff was a man of mature years, and had been about railroads and

cars enough to know that coupling cars was, at best, a dangerous employment, unless proper care was taken. He made, or undertook to make, a coupling in a draw-head that he had never looked at, although working about the engine for nearly a week. He undertook to insert the link without caring to look or glancing even casually at the draw-head, acting on the supposition that it was all right. This was in itself great negligence. It is not clear, by any means, that the break caused the accident. If it happened as he says it did, and the link caught in the break, then it is apparent that if the break had not been there, and he had undertaken to put the link in, precisely as he did, without looking, it would have come in contact with the end of the division between the two openings, and produced precisely the same result. The force of the engine would have thrown the link up sideways, and caught his hand. There was no more danger with this break, if he had his eyes upon it, than there was without it. The injury happened solely because he did not look to see where he was holding the link with reference to the openings in the draw-bar. It cannot be said, even if the defective draw-bar contributed to the injury, that plaintiff employed the usual and customary means to guard against accident.

The plaintiff endeavors to excuse himself for not looking, on the ground that, if he had so looked, he might not have known but what it was a perfect draw-head, "for there is a draw-head with one hole, and one with two," and he might have thought it only had one opening.

This is altogether too speculative to avail him against his obvious carelessness in not looking at all. He did not even give it a "casual glance."

It was his duty to exercise reasonable care in the performance of his work. In working five or six days about this engine, without examining this draw-head, which he must have known he was liable to use at any moment, and at-

tempting to make his first coupling without even looking to see if he was holding the link so it would enter the opening, or to notice whether it had one opening or two, he was not exercising any degree of care, and was grossly negligent. He must suffer because of his own carelessness, and cannot recover from the defendant.

The judgment of the circuit court is affirmed, with costs.

The other Justices concurred.