## SEDGWICK v. THE ILLINOIS CENTRAL R'Y CO.

1. **Pleading:** EVIDENCE: VARIANCE. In an action against a railroad company by a brakeman for injuries received while attempting to uncouple cars, on account of negligence of co-employes in moving the train, he alleged that he was *pushed, carried* and *crowded* along the track, to the cattle-guard into which he fell, by the moving engine and car. *Held* that it was not necessary that this allegation should be literally established, but that the ultimate inquiry was whether the falling into the cattle-guard, which was the cause of the injury, was itself caused by the moving of the engine and car, and that, if the evidence tended to prove that fact, there was no material variance, even though it showed that he voluntarily walked between the engine and the car to the cattle-guard.

2. **Railroads:** ACTION BY BRAKEMAN FOR INJURY: EVIDENCE: CONTRACT AND RULES OF COMPANY. In an action against defendant by a brakeman for personal injury received while attempting to uncouple cars in motion, *held* that the contract signed by defendant, under which he was employed, and in which he acknowledged that he had been made acquainted with a rule of the company, strictly forbidding any attempt to uncouple moving cars, and in which he also agreed to assume all risks of the forbidden act, and hold the company harmless for any injury he might sustain while doing it, was admissible in evidence against him, because it showed not only the existence of the rule, and that it constituted one of the conditions of the employment, but that its existence was known to plaintiff; and it was error to exclude it on the ground that it was incompetent and immaterial, and in conflict with § 1307 of the Code, and in contravention of public policy.

3. **Evidence:** ERROR IN EXCLUDING: SUBSEQUENT LIMITED OFFER TO ADMIT. Where evidence which is admissible for several purposes has been wrongfully excluded, a subsequent offer by the objecting party to admit it for one of the purposes does not cure the error.

*Appeal from Black Hawk Circuit Court.*

WEDNESDAY, OCTOBER 26.

THE plaintiff, as assignee of H. H. Oakes, brought this action to recover damages for a personal injury sustained by said Oakes while in defendant's employ as a brakeman on one of its trains. There was a verdict and judgment for plaintiff. Defendant appeals.

*W. J. Knight* and *J. L. Husted,* for appellant.

*O. C. Miller* and *H. C. Hemenway,* for appellee.

Sedgwick v. The Illinois Central R'y Co.

REED, J.—Oakes received the injury complained of while attempting to uncouple a car from the tender of the engine. The allegations of negligence contained in the petition are that the pin used to couple the car to the engine was too large, and fitted too tightly in the link to enable Oakes to readily pull it out, and was therefore defective, and unsuited to the purpose for which it was used. That he, without any knowledge as to the condition or size of the pin, and without any fault or negligence on his part, attempted to uncouple the car from the engine, and, while so engaged between the engine and car, the engineer negligently began to back the engine, without waiting for the usual and customary signal to be given by Oakes to indicate that he was ready therefor, and without giving any signal or notice to him of his intention to move the engine, and that thereby he was pushed, carried and crowded along the track to a cattle-guard, into which he fell, and was run over, and suffered the injuries complained of. The proof was that Oakes went between the engine and car while they were standing still to make the uncoupling. When he attempted to remove the pin, he discovered that it was so large, and fitted so tightly into the link, that it could not readily be removed. While he was working with it, and attempting to remove it, the engineer, without giving any signal or notice of his intention to move the engine, and without having received any signal from Oakes to move it, began to back it and the car towards the switch by which they intended to run the car onto the side track. Oakes walked along between the engine and the car as they moved, continuing his efforts to remove the pin. The cattle-guard is about 15 feet from the point where he went between the car and engine, and when he reached it he fell into it, and was run over by the tender, and seriously and permanently injured. He knew of the existence of the cattle-guard, and had passed over it on foot a number of times within a few minutes before the accident. But he testified that his attention was so absorbed in his efforts to remove the pin, that he

forgot the fact that he was approaching it.    It was a common
practice on defendant's road to uncouple cars while they were
in motion.    But the movements of the train, when uncoup-
lings are being made, are under the direction of the brakemen
who are charged with the duty of making them.    The engine
and car were moving at the time at about the speed at which
a man ordinarily walks, and there was nothing to prevent
Oakes from stepping out from betweeen them at any time
before he reached the guard.

I. The first point urged is that the proof does not sustain
the allegations of the petition in this: that, while the aver-
ment is that Oakes was *pushed*, *carried* and
*crowded* along the track to the cattle-guard by
the moving engine and car, the proof is that he
voluntarily remained between them, and walked to the guard.
It is true, perhaps, that the words of the petition, taken liter-
ally, imply the application of force by the moving bodies,
which had the effect to carry him to the cattle-guard. But it
was not essential that the allegation should · be established in
that literal sense.    The evidence sufficiently corresponds with
the allegation if it tends to establish its substance.    The imme-
diate cause of the injury was the falling of Oakes into the
guard; and the substance of the averment is that that was
caused by the moving of the engine and car.    The averment
that he was *pushed*, *carried* and *crowded* along the track relates
simply to the manner in which his fall into the guard occurred,
but the ultimate inquiry is whether that fall was caused by the
moving of the engine and car.    If the evidence tended to prove
that fact, as we think it did, there was no material variance.

1. PLEADING:
evidence: var-
iance.

II. Defendant pleaded in its answer that the act of Oakes,
in attempting to make the uncoupling while the engine and
car were in motion, was in violation of one of the
the rules adopted by it for the government of
its employes in the operation of its trains.    On
the trial it offered in evidence a paper which pur-
ports to be a notice to its employes, advising them
of many circumstances which are liable to occur in the oper-

2. RAILROADS:
action by
brakeman for
injury: evi-
dence: con-
tract and
rules of com-
pany.

ation of the trains, and which tend to render the employment especially hazardous, and directing them as to the manner of performing their duties in the operation of the trains.  One statement in the paper is as follows:    " It is dangerous to uncouple, or to attempt to place links or pins in draw-bars, while cars are in motion, and this is strictly forbidden." Attached to the paper was the following contract, which was signed by Oakes when he entered defendant's employment: "I, the undersigned, being employed as brakeman by the Illinois Central Railroad Company, hereby acknowledge that I have been made acquainted with the contents of the foregoing statement signed by Edward T. Jeffery, superintendent of said company, and understand the same, and, in consideration of my employment by said company, I hereby agree to assume all the risks of the service of said company, as set forth in said statement, and to obey the requirements thereof, and all rules now made, or that may be made by said company for the government of its employes, and that I will save said company harmless from all liability for injury that may come to me because of any such risks, or because I have not obeyed the directions of said statement, or any of the rules now or hereafter made for the government of its employes as aforesaid."

The circuit court excluded the paper on plaintiff's objection, on the ground that it was incompetent and immaterial, and was in conflict with the provisions of the statute, ( Code, § 1307,) and in contravention of public policy.  It may be that, regarding the instrument simply as a contract between the parties, some of its provisions could not be upheld; but we do not have occasion to go into that question; for, aside from its character as an agreement, there are grounds upon which we think it very clear that defendant was entitled to have it admitted in evidence.   It is the agreement upon which Oakes entered its service, and it contains specific directions as to the manner in which he was expected to perform the duties of his employment.   It advised him that it was regarded as a

dangerous act to attempt to uncouple when the cars are in motion, and that he was expressly forbidden to attempt to do that. The article signed by him is an admission by him that he knew of that prohibition, as well as an agreement that he would assume all the risks of the forbidden act, and hold the company harmless for any injury he might sustain while doing it. The company clearly has the right to make such reasonable rules as to the manner in which the operation of its trains shall be conducted as are necessary, either for its own protection, or the safety of its employes. If the injury sustained by Oakes was in consequence of his violation of the rule, unless there existed some necessity which imposed upon him a higher duty than that created by the rule, there is no principle of law that would permit a recovery therefor. The fact that he contracted to hold it harmless is quite immaterial. The defendant had the right to introduce the paper in evidence, then, because it showed, not only the existence of the rule, and that it constituted one of the conditions of the employment, but that its existence was known to Oakes.

After the court had sustained plaintiff's objection to the introduction of the paper, his counsel offered to consent that it might be introduced for the purpose of showing notice to Oakes of the danger, and it is contended that, as defendant by availing itself of that privilege could have secured its admission, it cannot now be heard to complain of its exclusion. There are two answers to this position: (1) The offer was made after the court had excluded the evidence, and there was no subsequent modification of the ruling; (2) defendant was entitled to introduce the paper for the purpose of showing the rule forbidding the uncoupling of cars while in motion, as well as to show notice of the danger of that act. So that the offer did not extend to all the matters which it was entitled to establish by the excluded evidence. As the case must be reversed on this ground, we do not consider the question as to the sufficiency of the evidence to sustain the verdict.

3. EVIDENCE: error in excluding : subsequent limited offer to admit.

REVERSED.