DELBERT D. KARRER v. THE DETROIT, GRAND HAVEN &
MILWAUKEE RAILWAY COMPANY.

*Contributory negligence— Injury while coupling cars — Submission
of case to jury.*

1. Plaintiff's case, as he presents it, is held to be an aggravated one of
   the grossest carelessness, for which he and no one else is respon-
   sible; the circumstances being more against him than in any of
   the similar cases in which a plaintiff has been held to the duty of
   examining his surroundings for himself. *M. C. R. R. Co. v.
   Smithson*, 45 Mich. 212; *Hathaway v. M. C. R. R. Co.*, 51 Id.
   253; *Batterson v. C. & G. T. Ry. Co.*, 53 Id. 125; *Brewer v. F. &
   P. M. Ry. Co.*, 56 Id. 620; *Goulin v. Canada Southern Bridge
   Co.*, 64 Id. 190.

2. Where there is conflicting testimony, and a plaintiff's case is made
   out unless disbelieved, it is proper to let the jury decide the con-
   troversy; but they should not be allowed to give a plaintiff a
   verdict against his own admissions and his own case as he makes
   it out, with no other reliance.

Error to Shiawassee. (Newton, J.)   Argued June 11,
1889.   Decided October 11, 1889.

Negligence case.   Defendant brings error.   Reversed.
The facts are stated in the opinion.

*E. W. Meddaugh,* for appellant.

*Matthew Bush, Jr. (Lyon & Hackleman,* of counsel), for
plaintiff.

CAMPBELL, J.   Plaintiff was an experienced head brake-
man on a freight train on defendant's road.   On Febru-
ary 1, 1887, his train arrived at Holly, late in the afternoon,
where he was directed to take a car standing on a side track,
and connect it with his train.   The engine was moved to the
side track, and backed, under his direction, and subject to

his orders, so as to bring one of the cars near the one to be attached. He put a link in the draw-bar of the car in motion, and walked back with it towards the standing car. While attempting to make the coupling his fingers were crushed. He claims it was the fault of the defendant, because of a defective draw-bar in the standing car.

The cause of grievance stated in the declaration is as follows:

" The defect complained of consisted in that the draw-bar and its appliances had become so old and worn out by long use without repairs that such draw-bar dropped and hung down about six inches lower than where it would be if in a proper state of repair, and in its proper position; that such defect of said draw-bar and its appliances was obvious and manifest, and could have been readily seen by defendant had it taken the trouble to have such car properly inspected, which it had not, or had it used reasonable care and diligence in the premises; that, owing to the darkness and snow, plaintiff could not and did not see the condition of said draw-bar as he approached it, and did not realize its condition until he was injured as aforesaid; that the draw-bar of the other car—the one attached to the train, and which contained the coupling-link taken hold of by plaintiff—was in good condition; that the cars to be coupled were of equal height, and the draw-bars to them, had they been in good condition, would have been upon a level with each other; but, owing to the bad and defective condition of the draw-bar and its appliances of the car the plaintiff was trying to couple to the train, the draw-bar of such car was much lower than that of the car to which it was to be attached, and when they came together the upper projecting edge of the defective draw-bar meeting the lower edge of the draw-bar to the other car, glanced upward and inward, catching and crushing plaintiff's fingers, as aforesaid," etc.

The case on the trial was peculiar in this: That every other witness testified that the draw-bar complained of was not down or defective; and several witnesses agree that plaintiff stated almost immediately after the accident that no one was to blame but himself, and that the trouble arose from his glove sticking to the link, and his foot slipping. But while a jury may have the power to disregard testimony

which agrees and believe what is contradicted, the verdict in the present case is directly against the charge of the court, and is not creditable to an intelligent jury. We are more concerned, however, with whether any case was made out, and whether any should have been left to the jury

The plaintiff's testimony for himself was all that was put in by him. According to that he was head brakeman, and doing the switching for the train. While at the depot he was told to hitch onto the car in question, which was on a side track, and which he says he never examined, and never saw before, or since, to his knowledge. He does not swear positively what kind of a car it was, but thinks it was a peddler car.

" The order was to lift a car to take to Fenton; and, if that was the case, it would be what we call a 'local worker.' I wouldn't be positive as to that."

When told to hitch on he was, as he says, probably from 25 to 30 rods from the car.

" I uncoupled the engine, hung onto one car, and went to the west switch, to back into this side track where these cars were, with the moving train."

He first coupled a lumber-car to the engine, or to a car just back of it; the testimony being a little blind on this. This lumber-car was the one which was to be coupled to the car designated on the side track, and when he had got the lumber-car attached to the advance car, and was preparing to couple it to the one behind, the latter was distant from 10 feet to half a car's length, or about a rod. Whether he signaled the engineer to back before or after he discovered there was no link in the lumber-car draw-bar is also left in doubt, but another brakeman, named Kipp, handed him a link, which he proceeded to put in and fasten with a pin while the train was moving backward, as required by his signal, and he walking back with it, having his lantern on his right arm and using his left hand to do the coupling. He had just got

the coupling-pin in place, and as he turned he was close by the other car, and, as he says, had no time to do anything but make the coupling as well as he could.    He attempted, as he says, to raise the draw-bar with his knee, as he saw it had dropped down, but it did not come up high enough, and struck the lower part of the draw-bar on the lumber-car, and slipped up and hurt his fingers.

It appears from his testimony that he saw the draw-bar complained of the instant he looked at it, and that, if he had looked around before the cars came together, he could have stepped out from between the cars.

It would be difficult to conceive of anything more reckless than his conduct as he himself describes it.    He was not acting under anybody else's orders as to the manner or time of coupling.    The engineer was acting on plaintiff's signals, and only moved as he ordered him to.    The company had given him this printed order for his guidance:

### "SPECIAL NOTICE.

"Every employé of this company is hereby warned that, before exposing himself or his fellow employés to danger, it will be his duty to examine the condition of all machinery, tools, cars, engines, or trucks that he is required to use in the performance of his duties, satisfying himself, so far as he reasonably can, that they are in safe working order.    It is the right and duty of every employé to take sufficient time to make such examination, and to refuse to obey any order which exposes him or his fellow employés to danger.    All cases of personal injury must be reported promptly to the superintendent, with all particulars that can be obtained." (Signed by the general manager, superintendent, and train manager.)

It was the plaintiff's duty to examine into the coupling arrangements of both cars before he attempted to couple them, and, as they were only a rod apart at most before he started the train back, and as he says the defect was visible at once to any one looking, one or two seconds would have furnished all the time needed to satisfy himself, had he been

acting under any one else's orders and not for himself; but, as he had personal direction of the engineer's movements, and could move when he pleased, the case, as he presents it, was an aggravated one of the grossest carelessness, for which he and no one else was responsible. The circumstances were more against him than in any of the similar cases in which we have held a plaintiff to the duty of examining his surroundings for himself. *Hathaway v. M. C. R. R. Co.*, 51 Mich. 253 (16 N. W. Rep. 634); *M. C. R. R. Co. v. Smithson*, 45 Id. 212 (7 N. W. Rep. 791); *Batterson v. C. & G. T. Ry. Co.*, 53 Id. 125 (18 N. W. Rep. 584); *Goulin v. Canada Southern Bridge Co.*, 64 Id. 190 (31 N. W. Rep. 44); *Brewer v. F. & P. M. Ry. Co.*, 56 Id. 620 (23 N. W. Rep. 440).

While, as already suggested, plaintiff's testimony as to the condition of the draw-bar is contradicted by all the other witnesses in the case who saw the car, and, among others, by the brakeman who made the coupling of the same car, yet we look for our present purpose solely to his statement of the facts, on which defendant was clearly entitled to have the case taken from the jury. The court practically told the jury that, if they found a state of facts which plaintiff himself had sworn to, he could not recover, and he was the only witness on his own behalf. Where there is conflicting testimony, and a plaintiff's case is made out unless disbelieved, it is proper to let a jury decide the controversy; but they should not be allowed to give a plaintiff a verdict against his own admissions and his own case as he makes it out, with no other reliance.

The judgment should be reversed, and a new trial granted, with costs of both courts to the defendant.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. MORSE, J., did not sit.