# CHARLESTON.

## JOHNSON *v.* CHES. & OHIO R'Y CO.

Submitted January 20, 1892.—Decided February 6, 1892.

1. DAMAGES—RAILROAD COMPANIES—NEGLIGENCE—MASTER AND SERVANT.

   A servant who seeks to recover for an injury which, he claims, resulted from defective machinery or appliances furnished by the master to be used about the business in which such servant was employed, takes upon himself the burden of establishing negligence on the part of the master, and due care on his own part; and, in order to entitle him to recover, he must overcome two presumptions: *first,* that the master has discharged his duty to the servant by providing suitable machinery and appliances for the business, and in keeping them in condition; *second,* that the servant assumed all of the usual and ordinary hazards of the business.

2. DAMAGES—RAILROAD COMPANIES—NEGLIGENCE—MASTER AND SERVANT.

   Such servant takes upon himself the burden of showing that the master had notice of the defect complained of, or that, by the exercise of the ordinary care which he is bound to observe, he would have known of it, and that the servant was ignorant of such defect and had not equal means of knowledge.

3. DAMAGES—RAILROAD COMPANIES—NEGLIGENCE—MASTER AND SERVANT.

   From the mere fact that an injury results to a servant from a latent defect in the machinery or appliances of the business, no presumption of negligence on the master's part is raised.   There must be evidence of negligence connecting him with the injury. The mere fact that machinery proves defective, and that an injury results therefrom, does not fix the master's liability.

4. DAMAGES—RAILROAD COMPANIES—NEGLIGENCE—MASTER AND SERVANT.

   Where an injury occurs to an employe of a railway company through a defect in the machinery or implements furnished to the employes by the company, knowledge of such defect must be brought home to the company, or it must be proved that the company was ignorant of the same through its own negligence or want of care, before the company can be made liable.

5. DAMAGES—RAILROAD COMPANIES—NEGLIGENCE—MASTER AND SERVANT.

   It is the duty of such railroad company to guard its employes

from injuries resulting from unsound, unsafe and defective engines, cars and appliances by having the same continuously inspected by persons competent to perform that duty; and the negligence of such inspector in the discharge of this duty is the negligence of the company.

*Simms & Enslow* for plaintiff in error cited 33 W. Va. 135; 24 W. Va. 37; 29 Conn. 548; 41 Barb. 366; 26 Barb. 39; 24 N. Y. 10; 64 N. Y. 5; 110 Mass. 23; 137 Mass. 243; 61 Ill. 162; 68 Ill. 545; 61 Mo. 520; 32 Mich. 411; 25 Ala. 659; 44 Pa. St. 375; Black Pr. & Pl. 10 (n. 1); Id. 28, 29; Thomp. Neg. 1053, § 48, 1054 (n. 4); 27 W. Va. 285; 33 Kan. 660; 61 Ia. 714, 715; 77 Ill. 365.

*Gibson & Michie* for defendant in error cited 33 W. Va. p't 5 Syll.; 24 W. Va. 37; 5 L. R. A. 750; 41 Am. & Eng. R'd Cas. 259; 44 Id. 523; 38 Id. 157; 17 Id. 583; 11 Id. 193.

English, Judge:

On the 3d day of May, 1890, E. E. Johnson brought an action of trespass on the case in the Circuit Court of Cabell county against the Chesapeake & Ohio Railway Company; and in his declaration he alleged that on the 16th day of January, 1890, he was in the service of the said defendant as a brakeman, whose duty to the said defendant required him to couple and to uncouple the said railway cars used, operated and controlled by the said defendant in and about its yard at the city of Huntington, in the said county of Cabell, of all of which the said defendant then and there had notice; and it then and there became and was the duty of said defendant to use all due, reasonable, and proper means, care, and diligence to avoid and prevent accidents, dangers, and injuries to the said plaintiff while in its service as yard-brakeman, as aforesaid, and to furnish and provide safe, sound and suitable railway cars, machinery, apparatus and appliances to be used by the said plaintiff in and about said service to the said defendant, yet the said defendant, not regarding its duty in that behalf, would not and did not use due, reasonable and proper means, care and diligence, nor any means, care and diligence whatsoever, to avoid and prevent accidents, dangers and injuries to the

said plaintiff while in its service as aforesaid, and would
not and did not furnish and provide safe, sound and suita-
ble railway cars, machinery, apparatus and appliances to be
used by the said plaintiff in and about his said service to
the said defendant, but wholly failed, neglected and refused
so to do, in this, to wit, that the said defendent, on the day
and year last aforesaid, at the said Cabell county, wrong-
fully, willfully, negligently and injuriously suffered and per-
mitted one of its freight-cars, to wit, freight-car No. 2616,
to be, to become and to remain defective and out of repair
in this, to wit, that on the day and year last aforesaid, in
said Cabell county, the said defendant wrongfully, willfully,
negligently and injuriously suffered and permitted the spring
in the draw-head of said freight-car No. 2616 to be, to be-
come and to remain short, weak, and defective, and a large
hole to become and to remain worn in the dead-block of
the said freight-car whereby, on the day and year last afore-
said, at the said Cabell county, while the said plaintiff was
in the service of the said defendant as a yard-brakeman, as
aforesaid, the said plaintiff was required by the said de-
fendant to uncouple the said freight-car No. 2616 from
a certain other freight-car, which said freight-cars were
then and there on the main track of said defendant's rail-
way, about four hundred yards east of the passenger depot
of the said defendant at the said city of Huntington, and it
then and there became and was necessary for the said plain-
tiff, in order to uncouple the said car No. 2616 from the
said other freight-car, to take in one of his hands the pin
which coupled together the said cars, and raise the said pin
with his said hand ; and while the said plaintiff was so en-
gaged in uncoupling the said freight-cars. as aforesaid, with-
out any default or negligence on the part of the said plain-
tiff, and without any knowledge on his part that the said
spring in the draw-head of the said car No. 2616 was short
and weak and defective, and that the said large hole was
worn in the dead-block of the said car, the said defendant
then and there, at said Cabell county, on the said 16th day
of January, 1890, wrongfully, willfully, negligently and in-
juriously and suddenly and with great force and violence,
drove and caused to be driven, and impelled and caused to

be impelled, the two said freight-cars, which the said plaintiff was endeavoring to uncouple, as aforesaid, together, and against each other, whereby and by means of the premises the said plaintiff was then and there, to wit, on the day and year last aforesaid, at the said county of Cabell, severely mashed, bruised, wounded, and injured, and had his left hand mangled and crushed, whereby said plaintiff lost three fingers and the greater part of his said left hand, and suffered great physical pain and mental anguish, and was permanently injured and crippled, and has lost much valuable time, to wit, hereto, and will always be partially disabled from active labor and exertion ; wherefore, and by means of the premises, and of the wrong, grievances, and injuries hereinbefore mentioned, the said plaintiff has sustained damages to the amount of twelve thousand dollars *etc.*

To this declaration a demurrer was interposed, which was considered by the court and overruled; and it is assigned as one of the errors relied on by the plaintiff in error, because said declaration was neither signed by the party nor his counsel, it being signed "G. & M. P. Q." But as this objection to the declaration does not appear to be insisted on by counsel for the plaintiff in error in their brief, and no other ground of demurrer is assigned, and we see no valid objection to the declaration, we must conclude that this ground of demurrer was assigned more by way of "abundant caution" than because it was seriously relied upon, and that the court committed no error in overruling the same.

Upon the plea of not guilty the case was submitted to a jury on the 10th day of December, 1890, who returned a verdict of three thousand five hundred dollars for the plaintiff; and thereupon the defendant, by its attorney, moved the court to set aside the verdict on the ground that it was contrary to the law, and the evidence, which motion was overruled, and a judgment was rendered against the defendant on said verdict. A bill of exceptions was taken in the cause, seting forth the testimony, and showing that the defendant moved to take from the jury all of the plaintiff's evidence, because the same was insufficient to maintain any verdict for him, which motion was overruled, and the court refused to take the plaintiff's evidence from the jury, to

which ruling the defendant excepted; and from said rulings and judgment of the court the defendant obtained this writ of error.

The second error relied on by the defendant is that "the court erred in refusing to strike out all the plaintiff's evidence from the jury, because the same was insufficient to maintain any verdict for the plaintiff, as the evidence totally fails to show that the defendant knew that the car was defective, or that it had been so long out of repair that it should have known it."

In considering this assignment of error the question presented is whether the plaintiff, by the evidence adduced in his behalf, had shown such a state of facts as entitled him to a verdict against the defendant when he rested his case. The claim asserted in the plaintiff's declaration is that his injury resulted from the use on the part of the defendant of a short, weak, and defective spring in the draw-head of car No. 2616, and from the further alleged fact that there was a large hole worn in the dead-block of said car, and that the defendant wrongfully, willfully, negligently, injuriously and suddenly and with great force and violence, drove and caused to be driven and impelled the two freight-cars, which the plaintiff was endeavoring to uncouple, together and against each other.

Now, while it is true that it is incumbent on the master to procure and provide suitable appliances and machinery for the purpose of carrying on the business, and a master who fails to provide such machinery must be regarded as guilty of negligence, and remiss in the duty he owes to his employes, yet we find that Wood, in his work on the Law of Master & Servant (page 754, § 382) says:

"The servant seeking to recover for an injury takes the burden upon himself of establishing negligence on the part of the master, and due care on his own part; and he is met by two presumptions, both of which he must overcome in order to entitle him to a recovery: First, that the master has discharged his duty to him, by providing suitable instrumentalities for the business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the ma-

chinery. It imposes upon him the burden of showing that the master had notice of the defect, or that, in the exercise of that ordinary care which he is bound to observe, he would have known it. When this is established he is met by another presumption, the force of which must be overcome by him, and that is that he assumed all the usual and ordinary hazards of the business."

Now the plaintiff, in his declaration, alleged that said cars were suddenly, and with great force and violence, driven and caused to be driven and impelled together, and the plaintiff, in his testimony on this point, contradicts himself, first saying the engineer gave him very easy slack: "It just came together lightly. I suppose it was running two or three miles an hour." And afterwards, in answer to a question, he answered: "No, sir; it was not very light. They came together with a right good crack."

Now, what is the testimony in regard to the character and condition of the spring which is claimed to have been defective, and to have caused the injury? It will be noticed that none of the witnesses for the plaintiff who testify upon this point saw the spring before the cars crashed together, causing the injury to the plaintiff's fingers. The plaintiff in his testimony says: "As soon as I got loose I came from between the cars." He was then asked, "Did you go back under the cars, and look at it again?" and replied, "I stooped down on the end of the ties, and Sol uncoupled the cars." He was then asked, "You say you didn't see the spring?" and replied, "Yes, sir; I saw the spring." And in reply to the question, "How long was the spring?" said, "I suppose it was about six inches." He also stated that he did not measure it, did not look at it closely, but could see that it was short.

Jack Newhart, another witness for the plaintiff, stated that he noticed the spring; did not inspect it very close; thought it was a very short spring—about six inches, he believed, in length; did not measure it, but only looked at it from the outside.

Sam Mullack, another witness for the plaintiff, was asked, "How long was that spring? Did you measure it?" and answered, "Newhart measured it." Newhart, however,

swears, as we have just seen, that he did not measure it.
And when said Mullack was further asked about said spring,
"Did you say it was too short?" he answered: "Yes, sir;
it looked like it was, to me—that it had been jammed. The
follower plate was jammed pretty bad."

These are all the witnesses for the plaintiff who speak
of the condition of said spring. They all examined the
spring, so far as they examined it at all, after the cars had
jammed together and the plaintiff had been injured; and
Mullack says: "The spring looked like it had been
jammed. The follower plate was jammed pretty badly."
No witness on the part of the plaintiff shows or throws
any light on the question as to when this spring and fol-
lower plate were jammed; neither is any notice or knowl-
edge of any defect in the coupling apparatus of this car
brought home to the defendant an hour or a minute before
the injury complained of occurred. We have no means of
judging or arriving at a correct conclusion as to the force
with which said cars jammed together, other than from the
results produced. The witnesses for the plaintiffs show
that when the draw-head and spring were examined, after
the cars came together and the plaintiff received his injury,
that the spring had the appearance of being jammed, and
"the follower plate was jammed pretty badly." No wit-
ness for the plaintiff, however, speaks of the condition of
these appliances before the plaintiff received his injury,
and no witness for the plaintiff examined said spring and
draw-head after said injury, so as to be able to speak with
any degree of certainty as to the length of the spring.
The plaintiff himself gave it such examination as he could
from the east end of the truck, and says he supposed it was
about six inches long. He did not measure it, but says he
had handled enough cars to know it was a six-inch
spring. And it must be remembered that this examination
was made by the plaintiff, stooping down on the end of the
ties, a few moments after his hand had been mashed, so
that his condition was not such as to enable him to make
a careful examination. The witness Newhart said he did
not examine it very closely; he thought it was a very short
spring—about six inches long, he believed; he did not

measure it, but looked at it from the outside. And the remaining witness for the plaintiff, Mullack, said he did not measure the spring; it looked like it was too short, to him; that it had been jammed. No structural defect is shown to have existed in this spring before the plaintiff was injured. It will be perceived that the evidence of the plaintiff as to the condition of this spring after the accident is merely conjectural, and not of that character upon which a jury should found a verdict.

Now, as to the other allegation in the declaration, that the defendant allowed a large hole to become and to remain worn in the dead-block of said freight-car. The plaintiff, when asked how big the hole was, replied : "It was about, I suppose, two or three inches. It was just like a gouged hole, where the end of the pin had gone under"—and in answer to another question he stated that those holes were found more or less in all cars; and the witness Newhart, when asked if the hole in the bumper-block makes the car defective, answered, "No, sir," and, when asked if the heavy force of the cars makes the head of the pin go against the bumper-block, answered : "Yes, sir ; most of them do that. All of the C. & O. cars do that."

This, then, is the evidence of the plaintiff as to the condition of the drawhead, spring, and bumper-block after the accident; and we may, in this connection, consider the testimony of the plaintiff himself as to the manner in which he was performing his duty at the time he received the injury. He was asked, "Did you pull it out before it went under there ?" (meaning the coupling pin) and replied, "I had got it out;" and again, in reply to the question, "State if Sol Midkiff examined the company apparatus," he said, "Yes, sir ; he pulled the pin out, and uncoupled the cars ;" and in another part of his testimony he says, "I stooped down on the end of the ties, and Sol uncoupled the cars." So that his own statements in regard to the matter are utterly inconsistent and contradictory ; and the testimony of the witnesses for the plaintiff, taken together, can not be considered of that character which would warrant a verdict.

The defendant, however, moved the court to set aside the verdict, and grant it a new trial, which motion was over-

ruled, and the defendant excepted; and this action of the court is assigned as error.

In considering this assignment of error, we may take into consideration the evidence adduced by the defendant, so far, at any rate, as the same is not in conflict with the evidence offered by the plaintiff, and we may consider whether the verdict rendered by the jury is sanctioned by the law applicable to the facts proven. When our attention, then, is directed to the testimony of Ely Goodall, a witness introduced by the defendant, it appears that it was his duty to inspect cars; that this car was inspected in the yard that morning by crawling under it, and examining the spring, plate, and draw-head, and that he found nothing wrong with it—the spring was out against the follower, and the car was all right. This evidence discloses the condition of said car and its appliances before the accident, and is in conflict with no testimony in the case. So far, then, from the defendant having any notice of any defect in said spring and draw-head, the defendant appears, by its inspector, to have examined said car on the morning before the plaintiff was injured, and the car and its appliances were found all right. When this spring was jammed, does not appear. It may have been after the car was coupled up that morning, and it may have been by the cars coming together when the plaintiff's hand was injured. Be this as it may, there is nothing in the case which brings notice of any defect home to the defendant; but, on the contrary, the defendant shows that the car was inspected that morning, and was found supplied with a proper spring.

We find that Wood, in the Law of Master & Servant (section 368, p. 743) under the heading, "What Servant must show to Charge the Master," says: "From the mere fact that an injury results to a servant from a latent defect in machinery or appliances of the business, no presumption of negligence on the master's part is raised. There must be evidence of negligence connecting him with the injury. * * * The mere fact that machinery proves defective, and that an injury results therefrom, does not fix the master's liability."

In the case of *Railway Co.* v. *Trosoch*, 68 Ill. 545 (p't 6

of syllabus) it was held that "if any injury occurs to an employe of a railway company through a defect or insufficiency in the machinery or implements furnished to the employes by the company, knowledge of the defect or insufficiency must be brought home to the company, or it must be proved it was ignorant of the same through its own negligence or want of care—or, in other words, it must be shown that the company, as master, either knew or ought to have known the defects which caused the injury—before the company can be made liable."

So, also, in the case of *Hayden* v. *Manufacturing Co.*, 29 Conn. 548, it was held that "an employe can not recover for an injury suffered in the course of his employment from a defect in the machinery used by his employer, unless the employer knew or ought to have known of the defect, and the employe did not know of it, or had not equal means of knowledge."

In the case of *Railroad Co.* v. *Wagner*, 33 Kan. 667, 7 Pac. Rep. 204, the court, in delivering its opinion in the case, in which it appears that Wagner was injured while coupling cars by reason of a defective spring to the draw-head, uses the following language: "In the present case, as no negligence is imputed to the railroad company except in using a passenger coach with a draw-bar connected with a defective spring, or with some other defective appliance, and as it is not shown that the railroad company or any of its employes, or indeed any other person, had any knowledge or notice of such defect prior to the occurrence of the accident upon which the plaintiff's action is founded, it can not be said that any negligence whatever, upon the part of the railroad company, has been shown; and the verdict and judgment in the court below should have been rendered in favor of the defendant."

It is a well-known fact that a brakeman, and especially one who is employed in a railroad yard in a city where several railroads concentrate, whose duty it is to be almost constantly engaged in coupling and uncoupling cars, occupies one of the most hazardous positions connected with the railroad business, and a party who enters such an employment assumes all the ordinary risks incident to his employ-

ment; and so this Court has held in the case of *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. Rep. 53, fourth p't of syllabus) "when a servant enters into the employment of a master, he assumes all the ordinary risk incident to his employment, whether the employment is dangerous or otherwise;" and in the same case (p't 11 of the syllabus) it is held that "a servant can not recover for an injury suffered in the course of his employment from a defect in the machinery or appliances used by the master, unless the master knew or ought to have known of the defect, and the servant was ignorant of such defect, or had no equal means of knowledge." See, also, *Berns* v. *Gas Coal Co.*, 27 W. Va. 285 (p'ts 3 and 4 of syllabus); *Humphreys* v. *Newport News & M. V. Co.*, 33 W. Va. 135 (10 S. E. Rep. 39) p'ts 4 and 5 of syllabus, where it is held that "in an action by the servant against the master for injury from defective machinery or appliances the burden is on the servant to show that the same was defective;" also that "a servant can not recover for an injury to him from such defective machinery or appliances, unless the master knew or ought to have known of the defect, and the servant was ignorant of such defect, or had no equal means of knowledge."

It is true that this Court has held in the case of *Cooper* v. *Railroad Co.*, 24 W. Va. 38 (p't 4 of syllabus) that "it is the duty of a railroad company to guard it employes from injuries resulting from unsound, unsafe, and defective engines, cars, and appliances, by having the same continuously inspected by persons competent to perform that duty; and the negligence of such inspector in the discharge of his duty is the negligence of the company."

In the case at bar, however, the defendant in error failed to show any negligence of this character, while the plaintiff in error showed by uncontroverted evidence that this car had been properly inspected on the morning that the injury occurred.

Applying these principles to the facts and circumstances developed in this case, the verdict and judgment complained of can not be sustained. No witness in behalf of the plaintiff brings home to the defendant any knowledge or

notice of any defect in the spring or other appliances belonging to the car which is claimed to have been defective until after the accident occurred; and, even then, W. L. Ogden, a witness for the defendant, says the spring was not broken, and that it was an eight-inch spring, when he examined it, an hour after the accident. When, however, we consider the uncontradicted testimony of the defendant's witness Ely Goodall, who was a car inspector, and states that he examined car 2616 on the morning before the accident, and found the spring and all the appliances in good condition, and the car all right, we can see no reason for distinguishing this accident and the resulting injury from the thousands of similar, unavoidable casualties which occur to persons engaged in the hazardous business of brakeman, when no blame or liability is incurred by the railroad company. For these reasons the judgment complained of must be reversed, the verdict set aside, and a new trial awarded, with costs to the appellant.

REVERSED. REMANDED.