# CHARLESTON.

## JOHNSON v. CHES. & OHIO R'Y Co.

Submitted September 9, 1893. —Decided November 11, 1893.

1. INJURIES TO EMPLOYE—CONTRIBUTORY NEGLIGENCE—VIOLATING RULES OF MASTER.

A printed rule of a railroad company says among other things. "Entering between cars, while in motion, to uncouple them and

all such imprudences are dangerous and in violation of the rules
of this company."

2. INJURIES TO EMPLOYE—CONTRIBUTORY NEGLIGENCE—VIOLATING
RULES OF MASTER.

A brakeman, who wilfully and unnecessarily violates a reasonable precautionary rule known to him, or which he must be taken to have known, can not recover for an injury, of which such violation of the rule is the direct efficient cause.

3. INJURIES TO EMPLOYE—CONTRIBUTORY NEGLIGENCE—VIOLATING
RULES OF MASTER.

An employe having knowledge of the danger about him, must use prudence and care to protect himself from harm ; and if he wilfully and imprudently encounters such danger the employer is, generally, not responsible for the injury caused thereby.

SIMMS & ENSLOW, for appellant :

I.—*"A servant can not recover for an injury suffered in the course of his employment from a defect in the machinery or appliances used by the master, unless the master knew, or ought to have known, of the defect, and the servant was ignorant of such defect, or had not equal means of knowledge."*—33 W. Va. 135 ; 31 W. Va. 142 ; 24 W. Va. 37 ; 29 Conn. 548 ; 41 Barb. 366 ; 26 Barb. 39 ; 24 N. Y. 10 ; 64 N. Y. 5 ; 110 Mass. 23 ; 137 Mass. 243 ; 61 Ill. 162 ; 68 Ill. 545 ; 61 Mo. 520 ; 67 Mo. 272 ; 32 Mich. 411 ; 25 Ala. 659.

II.—*The mere fact that machinery proves defective, and that an injury results therefrom, does not fix the master's liability.*—Wood's Master and Servant, Section 368.

III.—*"Negligence is not to be found without evidence.    There is always a presumption against it, and, therefore, a plaintiff who asserts it and avers that he has received an injury, must always adduce proof that the defendant did not exercise ordinary care.    If no such proof be adduced, the presumption of innocence remains, and it is error to submit to the jury the question whether there was negligence."*—44 Pa. St. 375 ;  Black on Proof and Pleadings in Accident Cases, p. 10 and Note 1.

IV.—*"And when a servant was injured while uncoupling cars which were alleged to be defective, he must prove : First, the defective condition of the cars.    Second, an injury resulting therefrom.    Third, notice, actual or presumptive, of such defect on the part of the owner or master."*—Black on Proof and

Pleadings in Accident Cases, pp. 28 and 29.    2 Thompson's Negligence, 1053, Sections 48 and 1054, Note 4.

GIBSON & MICHIE, for defendants in error, cited :
41 A. & E. R'y Cas. 259 ; 31 A. & E. R'y Cas. 190 ; *Id.* 185 ; 21 A. & E. R'y Cas. 637 ; 18 A. & E. R'y Cas. 96 ; 15 A. & E. R'y Cas. 290 ; 12 E. & A. R'y Cas. 214 ; *Id.* 523 ; 8 A. & E. R'y Cas. 119 ; 2 A. & E. R'y Cas. 140 ; 23 Pac. 792 ; 12 S. E. Rep. 632 ; 48 N. W. Rep. 409 ; 109 U. S. 213 ; 116 U. S. 642.

HOLT, JUDGE :

This is an action in case brought in the Circuit Court of Cabell county on May 3, 1890, by E. E. Johnson against the railway company for negligence in failing to keep the car coupling in proper order, whereby plaintiff, a brakeman, engaged in uncoupling the cars, had his left hand caught and mashed so as to require amputation of all except the forefinger and thumb. It was, on the issue of "Not guilty," tried by the jury on December 10, 1890, who found for plaintiff three thousand five hundred dollars damages ; and the defendant moving for a new trial, the court overruled the motion and gave judgment. From this, defendant appealed.

The cause was heard in this Court at the January term, 1890, when the judgment was reversed, the verdict set aside, a new trial awarded, and the cause remanded.    See Johnson *v.* Railway Co., 36 W. Va. 73 (14 S. E. Rep. 432).

On the 12th of September, 1892, it was again tried by a jury on the same pleadings ; and the jury found for plaintiff and assessed his damages at three thousand three hundred dollars, but subject to the opinion of the court on defendant's demurrer to the evidence ; and the court, being of opinion that the law on the demurrer was for plaintiff, overruled the same and gave judgment for the damages found by the jury ; and defendant excepted and has brought the case up again on writ of error.

Plaintiff was a brakeman with the shifter of freight trains in the yard of the company at Huntington. On the 16th day of January, 1890, while the freight cars drawn by the

yard-engine or shifter were moving forward slowly, about three miles an hour, he went in between them to pull the pin, in order to uncouple car No. 2,616. He caught the pin but found it tight in the hole, and grabbed it around with his whole hand. Just then the drawhead went back under the car and caught his hand betwen the pin and the dead block and held him there, by the hand, until it was loosened by the slack that had been given by the engineer at plaintiff's signal going out. The train was still moving forward and carried him along forty or fifty feet. His hand was thereby so badly mashed that all but the forefinger and thumb had to be amputated, leaving a stiff wrist and a badly crippled hand. He did not examine the spring—had no opportunity to examine it—but from what he saw, took it to be a spring about six inches long, which had been strained to some extent—weakened in the power of recovery ot length by recoil—as the result of having been at some former time severely jammed.

He had seen the rules of the railway company more than once, as printed on the back of the schedules, and among them was rule No. 142, an extract from which reads as follows: "Every employe is required to exercise the utmost care to avoid injury to himself or to his fellow employes, especially in switching, or other movements of cars or trains. * * * Entering between cars, while in motion, to uncouple them, and all such imprudences, are dangerous, and in violation of the rules of the company."

This is from plaintiff's testimony on his own behalf, and one of his witnesses says: The men have always been notified not to go between the cars, to couple or uncouple, while in motion, but a man frequently goes in between them when in motion. That it was not necessary to do so, in order to uncouple, but it can be caught at the slack better by going in. Yet it is dangeous every time a man goes between them while they are moving."

There is nothing to show, that the company knew or ought to have known, that the coupling apparatus of the car in question was out of order. In fact, as plaintiff's own testimony on this point may be said to be only conjectural, and as one of his witnesses said the spring was all

right, it may be said without contradiction of it, that it was inspected in about an hour after the accident, and found to be in good order. But conceding for the purposes of this case that the defendant did not take due care to keep safe this coupling apparatus, yet it appears from plaintiff's own testimony, that, if he did not in fact read this rule of the company, he frequently had it in his hands with opportunity to read it, and, from the testimony of one of his witnesses, that "the men are always notified not to go in between the cars to uncouple, while they are in motion, and that it is unnecessary, and obviously dangerous at all times;" and it is equally clear from plaintiff's own testimony and that of his witnesses, that his violation of this rule was the direct proximate cause of his injury, without which it would not have happened. To hold otherwise would be giving the party the advantage of his own wrong.

The rule was reasonable, and made for his own safety and protection. He knew the rule or ought to have known it. There was no urgent necessity no higher rule calling for the violation of this one. Furthermore, his own and other testimony introduced on his behalf shows, that he was wanting in reasonable care and prudence, in the manner and time in which he caught hold of the coupling pin. And when the plaintiff undertakes to point out, as he must do, how the duty arose which is supposed to have been neglected, he shows a violation on his own part of this precautionary rule prescribed for his own protection from danger.

That such is the doctrine on the subject, see *Karrer* v. *Railroad Co.*, 76 Mich. 400 (43 N. W. Rep. 370); *Cullen* v. *Roofing Co.*, 114 N. Y. 45 (20 N. E. Rep. 831); *Railroad Co.* v. *Kerr*, 25 Md. 521; *Sedgwick* v. *Railway Co.*, 76 Ia. 340 (41 N. W. Rep. 35); *Id.* 73 Ia. 158 (34 N. W. Rep. 790); *Railway Co.* v. *Barber*, 71 Ga. 644; *Goulin* v. *Bridge Co.*, 64 Mich. 190 (31 N. W. Rep. 44); *Railway Co.* v. *Rice*, 51 Ark. 467 (11 S. W. Rep. 699); *Lockwood* v. *Railway Co.*, 55 Wis. 51 (12 N. W. Rep. 401); Beach Contrib. Neg. § 364.

A servant can not recover, if his injury is the direct result of his own disobedience of orders, *Knight* v. *Cooper*, 36 W. Va. 232 (14 S. E. Rep. 999) or of a reasonable rule, *Overby*

*v. Railway Co.*, 37 W. Va. 524 (16 S. E. Rep. 813). And as to the manner and the time of taking hold of the coupling pin in such dangerous circumstances he must use circumspection and care in protecting himself from harm and be himself blameless about the business which caused the injury; otherwise he can not recover.

We are cited by counsel for plaintiff to a number of cases, which lay down the doctrine, that it is the non-assignable duty of the railway company to provide the employe with a suitable and safe place and appliances, not as an insurer but as a prudent and careful employer, and use due care to keep them so. *Railroad Co. v. Herbert*, 116 U. S. 652 (6 Sup. Ct. 590); *Hough v. Railway Co.*, 100 U. S. 213. See, also, *Kane v. Railway Co.*, 128 U. S. 91 (9 Sup. Ct. 16); *Jones v. Railroad Co.*, 128 U. S. 443 (9 Sup. Ct. 118). And, on the subject generally, see *Railway Co. v. McDade*, 135 U. S. 554 (10 Sup Ct. 1044); 2 Thomp. Neg. 969, 972; Cooley, Torts, 657; Bish. Non-Cont. Law, § 642 *et seq.*

Upon grounds of public policy as well as of private rights no duty of the railroad company should be more unrelentingly exacted than the duty of constant watchfulness to make and keep the track safe and clear; to have suitable appliances, and have them kept in good order and repair. No cases lay down this doctrine more fully and broadly than the cases of *Cooper v. Railroad Co.*, 24 W. Va. 37; *Riley v. Railway Co.*, 27 W. Va. 145; *Madden v. Railway Co.*, 28 W. Va. 610; and *Criswell v. Railway Co.*, 30 W. Va. 798 (6 S. E. Rep. 31)—a duty due to their employes as well as to passengers, and, though not requiring the same degree of care, yet often not separate from it.

These cases show that it was the personal, non-assignable duty of the railroad company to furnish and keep in repair a reasonably suitable and safe coupling apparatus; but, whether it did so or not, it does not relieve plaintiff from the observance of a reasonable precautionary rule prescribed in the main for his own safety, nor from the discharge of his duty to take care to protect himself from harm, and not willfully encounter such a danger. His own evidence shows that his own negligence was the direct, efficient cause, without which the injury would not

have happened; and the demurrer to the evidence should not have been overruled, but judgment should have been rendered thereon according to the conditional verdict of the jury for the defendant. Therefore, the judgment complained of is reversed, and the judgment which should have been given is now entered.

# CHARLESTON.

