NORA NEAL, Administratrix of the Estate of BURDETTE W. NEAL, Deceased, v. SHEFFIELD BRICK & TILE COMPANY, Appellant.

**Evidence:** IMPEACHMENT. Where a witness admitted the signing of a statement but did not remember its contents or that he had read the same, and the statement was not admitted as part of his cross-examination but was subsequently received as independent evidence in support of the defense, an instruction that it might be considered as a declaration of the witness in connection with his testimony to determine the weight to be given his evidence was proper.

**Same:** HYPOTHETICAL QUESTIONS. Hypothetical questions need not include all the facts and circumstances which the evidence tends to establish.

**Master and servant:** USE OF EXPLOSIVES: DUTY TO WARN: INSTRUCTION. The duty of giving an employee, engaged in a work involving the use of highly dangerous explosives, timely and adequate warning is a magisterial duty which can not be delegated so as to relieve the master from responsibility, irrespective of the competency of the foreman in charge of the work.

**Same:** MEASURE OF DAMAGES: INSTRUCTION. In this action for the death of a servant an instruction as to the measure of damages which permitted the jury to consider the age of deceased, his occupation, the wages he was earning, his condition of health and ability to earn, as well as his expectancy of life, in determining the probable loss to his estate, was not erroneous for failure to suggest that the jury should consider what the deceased would have spent had he lived.

**Pleadings:** AMENDMENT. It was proper to permit the amendment of the petition after submission of the case in which the plain-

tiff set out more specifically the same ground of negligence originally charged, and which the court had submitted, where the cause was tried and submitted on the theory that the matter pleaded in the amendment was in issue and counsel had previously stated his intention to file such amendment.

*Appeal from Franklin District Court.*—HON. CHAS. E. ALBROOK, Judge.

THURSDAY, MARCH 9, 1911.

ACTION to recover damages accruing to the estate of Burdette W. Neal as the result of his death alleged to have been occasioned by the negligence of the defendant while deceased in defendant's employ was working in a clay pit. There was a verdict for the plaintiff, and from judgment on such verdict the defendant appeals.—*Affirmed.*

*Carr, Carr & Evans* and *David Evans,* for appellant.

*Jno. M. Hemingway* and *C. F. Johnston,* for appellee.

McCLAIN, J.—The deceased, with other employees of the defendant, was engaged in removing clay from defendant's clay pits, under the direction of one Frances as foreman. Frances had charge of the work of loosening the clay by blasting with charges of dynamite and on him rested the duty of giving warning to the employees when a blast was to be fired so that they might seek places of safety. The evidence tended to show that, just before the firing of the blast which resulted in the death of the deceased, Frances gave the usual warning, and the employees, including deceased, retreated to the usual distance and to a distance which would have rendered them safe if the usual blast had been fired, but that Frances had planted for this blast an unusual quantity of dynamite, nine sticks in all, and that the firing of this blast caused an unusual re-

sult, a part of which was that a piece of shale or hard clay was blown upward through the roof of a shed which covered the place where the usual work was being prosecuted, and that this piece fell upon deceased where he stood in a distant part of the pit causing his death. There was a conflict in the evidence as to whether Frances gave warning that there would be an unusual blast.

I. In connection with the cross-examination of a witness for plaintiff, counsel for defendant called his attention to a written statement purporting to be signed by him

1. EVIDENCE: impeachment.

soon after the accident in regard to whether Frances gave warning of an unusual danger in the blast which was about to be fired. The witness admitted the signing of such statement, but testified that he did not remember whether he read the statement through and did not remember the words contained therein to which his attention was specifically called. The court refused to receive in evidence this statement as a part of the witness's cross-examination; but such statement was subsequently offered in behalf of defendant as independent evidence in support of its defense, and the court instructed the jury that it might be considered as the declaration of the witness in connection with his testimony given in open court for the purpose of determining what weight should be given to such testimony. In other words, the court treated the written statement as constituting impeaching evidence and not as the testimony of the witness. In this there was no error. The witness did not testify that the statements in the written instrument were true, and clearly such instrument received in evidence though admittedly signed by the witness, was admissible only for purposes of impeachment. They constituted declarations of the witness made out of court and not under oath inconsistent with his statements under oath.

II. A witness for plaintiff interrogated as an expert in the use of dynamite in blasting was allowed over defend-

ant's objection to testify that it would be unsafe for a person to stand within fifty feet of an explosion occasioned by nine sticks of dynamite inserted into shale, provided there was no protecting barrier, and that a competent person using dynamite in that way would be able to judge beforehand the extent of the explosion liable to follow. The objections made to the questions calling for this testimony were that the witness had not shown himself to be competent, and that all the facts and conditions surrounding the explosion in question were not included in the interrogatory. We think the court did not exceed its discretion under the record in allowing the witness to testify as an expert in view of his prior experience. The objection that the facts and conditions surrounding the explosion were not included in the interrogatory was not well taken. It is not necessary that a hypothetical question include all the facts and circumstances which the evidence tends to establish. *Brooks v. Sioux City,* 114 Iowa, 641. There was no objection made to the questions asked on the ground that facts and circumstances were included in the hypothetical questions of which there was no evidence in the record.

*2. SAME: hypothetical questions.*

III. The court excluded from the jury all the allegations of negligence save that Frances exploded the dynamite without giving fair warning, and instructed that if he gave to the deceased fair warning of the fact that there was about to be discharged a charge of dynamite of more than usual force and danger, and gave deceased fair opportunity to escape from the danger of the same, then there was no negligence on the part of the defendant; but that, if the jury found that Frances was negligent in what he did, then the defendant was liable for the resulting injury. The giving of this instruction and others of like tenor is complained of for defendant on the theory that, having established a proper system for doing the work involving the

*3. MASTER AND SERVANT: use of explosives: duty to warn: instruction.*

giving of proper warnings of the dangers which would arise from blasting and employing a competent person to give such warnings, the defendant was not chargeable with any negligence of the person so employed in failing to give a proper and adequate warning of the particular blast which caused the death of deceased.

It may well be conceded that Frances and deceased were coemployees and fellow servants in the same work of removing clay from the pits, and that for the negligence of Frances as such coemployee causing injury to the deceased defendant was not liable if it was not negligent in establishing the method in accordance with which the work was to be done or in the employment of Frances as a competent person to discharge the duties intrusted to him. But we have held in a recent case that, when the prosecution of the work in which an employee is engaged involves the use of highly dangerous explosives, the duty of giving timely and adequate warning is a magisterial duty which can not be delegated so as to relieve the master from responsibility as to the giving of such warning in a particular case or under the particular circumstances attending the facts. *Hendrickson v. United States Gypsum Co.*, 133 Iowa, 89. We have since said that this is a border line case, and one presenting unusual difficulties, but that it can not be regarded as overturning any of the well established rules of the liability of the master to the servant, although it involved an application of these rules in a somewhat exceptional way. *Galloway v. Turner Imp. Co.*, 148 Iowa, 93. We have no disposition to recede from the conclusion announced in the *Hendrickson* case under circumstances involving the very question there decided. This case involves that exact question. The defendant was employing deceased in the business of removing clay and shale from a pit in a method which necessitated the use of high explosives in a manner calculated to imperil the lives of its employees so engaged. It had invested Frances

with the responsibility of using such explosives in the con-
duct of the work, and it had charged him with the duty
of giving timely and reasonable warning. It did not fully
discharge its duty as a master to see that such warning
was given by employing Frances as a competent person to
give it, but the duty remained upon it as master to see that
in a particular case such warning was given. If Frances
was negligent in not giving adequate warning his negli-
gence was not that of a fellow servant of the deceased; but
it was that of the master, who at the very time and place
was still chargeable with the performance of that duty.
In this respect Frances was a vice principal and not a co-
employee of the deceased. The court did not err therefore
in submitting to the jury the question as to the negligence
of Frances in failing to give adequate warning of the un-
usual explosion which, as he was bound to know, would re-
sult from the firing of an unusual quantity of dynamite
irrespective of the question whether Frances was a compe-
tent man to whom such duty might be intrusted.

IV. An instruction on the measure of damages is ob-
jected to on the ground that, while it allowed the jury to
take into consideration the age of deceased at the time of
his death, his occupation, the wages he was
earning, the condition of his health, and his
ability to earn money, as well as his expect-

**4. SAME:**
measure of
damages:
instruction.

ancy of life, in determining the probable pecuniary loss
to his estate by his death, there was nothing in the in-
struction to suggest that the jury should take into consid-
eration what the deceased would have spent had be lived.
The instruction given is no broader in its scope than that
approved in *Lowe v. Chicago, St. P., M. & O. R. Co.,*
89 Iowa, 420. In that case the trial court was sustained
also in rejecting an instruction specially calling attention
to the fact that the allowance should be for the amount
deceased would have accumulated and had over and above
his liabilities at his death. In *Wheelan v. Chicago, M.*

*& St. P. R. Co.,* 85 Iowa, 167, a similar instruction was considered with reference to the objection that it allowed the jurors to base their verdict upon the gross amount of what they should find that the earnings of deceased would have been had he lived, reducing that amount to its present worth, and it was held that the instruction was not erroneous, although it would have been better had there been some limitations specifically suggesting the net, as distinct from the gross, earnings as the basis for the estimate which the jury should make. We think it is plain that from the instruction before us the jury must have understood that the amount of the probable net earnings of deceased was to form the basis for determining the amount of the verdict. It is also plain that the jury should not have been required, however, to estimate the loss to the estate of deceased by his death on the basis of what his accumulations had been at that time. In *Hammer v. Janowitz,* 131 Iowa, 20, an instruction which was approved allowed the jury to take into account habits as to industry, thrift, and economy, and all other facts and circumstances in the evidence tending to show the amount if any that the estate might have accumulated if deceased had lived out the term of his natural life. But it is not contended that in the present case there was any evidence as to thrift, economy, or lack of such qualities, and, in the absence of any such evidence, we think it was not error to omit reference to such possible circumstances in the instruction. No request for any further instruction on the subject was made, and, as the instruction given was correct so far as it went, we would not be authorized in reversing the case in this respect.

V. After submission of the case to the jury, plaintiff filed an amendment to her petition setting out more specifically the very ground of negligence which the court had 5. PLEADINGS: submitted, and defendant's motion to strike amendment. this amendment as filed too late was overruled. The amendment was not too late if it was proper,

and it was proper at that stage of the proceedings if it did not change substantially the issues on which the case had been tried and submitted.    It was made to appear by a sworn statement to the lower court of the attorney for plaintiff, and by the court's own recorded statement of its recollection, that at the conclusion of plaintiff's evidence and in connection with a motion for a directed verdict, the court suggested a doubt as to the sufficiency of plaintiff's amended and substituted petition to sustain a verdict under the evidence for plaintiff, and that counsel for plaintiff then announced his intention to amend the petition in that respect.    Counsel for defendant stated that counsel for plaintiff said in that connection that if his allegations were not sufficient he could amend.    The controversy was therefore as to whether plaintiff's counsel said that he would amend, or only that he could amend, and the recollection of the court seems to have been that the former was the statement made.    It is not contended that counsel for defendant in reliance on the failure of counsel for plaintiff to file the amendment before the submission of the case to the jury omitted to introduce any evidence or to ask any instructions which might properly have been introduced or asked had the allegations formerly made by the amendment been already made.    The whole case seems to have been tried and submitted on the theory that the matter pleaded in the subsequent amendment was in issue.    Whether it was really in issue under the pleadings as they stood before the amendment we need not determine, for no prejudice can have resulted to the defendant from the delay in making the formal amendment until after the case was submitted.    In this respect there was no prejudicial error.

The judgment of the trial court is therefore *affirmed*.

EVANS, J., takes no part.