J. W. Pike, v. Cedar Rapids & Marion City Railway Company, Appellant.

**Master and servant:** NEGLIGENCE OF STREET RAILWAY COMPANY. A street railway company which maintains its cross wires for the support of trolley poles closer to the ground than permitted by

a city ordinance is guilty of negligence for which an employee injured thereby may recover.

Same: CONTRIBUTORY NEGLIGENCE: EVIDENCE. In this action the question of whether a street car conductor was negligent in failing to observe the cross wires by which he was caught and thrown to the ground while holding a broken trolley pole in position was for the jury.

Same: INSTRUCTION. In this action for injury to a street car conductor from contact with overhead wires, while on top of the car holding a broken trolley pole in conducting the car to the barns, an instruction that plaintiff was required to exercise reasonable care and was chargeable with such knowledge as in the exercise of reasonable care he ought to have known; that the jury should consider the character of the work, rules of the company and plaintiff's knowledge thereof in determining whether he saw or should have seen the wires; and, conceding that he saw the wires, whether his mind was momentarily diverted from the danger, and should consider all the facts existing at the time, was not erroneous because attempting to excuse his negligence, and as limiting the jury to a consideration of the facts surrounding him at the time of his injury.

Same: SCOPE OF EMPLOYMENT. The evidence in this case disclosed that in like accidents the employees usually returned the car to the barn in the manner pursued by plaintiff, and that the superintendent of defendant saw the plaintiff on top of the car just before the accident and made no objection to the manner in which he was conducting the car; and it is held that a finding that plaintiff was acting within the scope of the employment was justified, notwithstanding the fact that a rule of the company required such accidents to be reported to the company.

Same: EVIDENCE OF CUSTOM: WAIVER. A custom of employees in the performance of work at variance with a rule of the master and acquiescence therein may be shown to establish a waiver.

Same: ADMISSION OF EVIDENCE: HARMLESS ERROR. Any error there may have been in the admission of evidence in this case to the effect that when a car was disabled the employee longest in the service was to assume charge, which in this instance was the motorman, and that he directed plaintiff to remain on top of the car and hold the trolley pole, was not prejudicial, in view of the court's instruction that the motorman was a fellow servant for whose acts the defendant was not liable.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROBBINS, Judge.

WEDNESDAY, MAY 10, 1911.

ACTION for damages resulted in judgment against defendant, from which it appeals.—*Affirmed.*

*William G. Clark* and *William E. Steele,* for appellant.

*Rickel & Dennis* and *P. W. Tourtellot,* for appellee.

LADD, J.—I. Negligence of the defendant was established conclusively. The ordinances of the city of Cedar Rapids required "the cross-wires or brackets, as the case may be, for the support of trolley wire, shall be attached to said posts at such a height as to maintain said trolley wire at every point not less than eighteen feet above the surface of the street." A penalty was prescribed for violation thereof. The cross or span wire which caught plaintiff and threw him from the top of the car was nearly two feet less than eighteen feet from the surface. The company was negligent in not maintaining the wire at the required height.

1. MASTER AND SERVANT: negligence of street railway company.

II. The main controversy is whether plaintiff also was negligent, and thus contributed to his injury. He had been an extra conductor on the defendant's line for several months. At about eight o'clock in the morning of September 5, 1907, the car started from Cedar Rapids for Marion; he acting as conductor and Cris Borchart as motorman. It had passed Fourth Avenue, and, when backing up to turn, the trolley pole came from the wire and was bent. Plaintiff and Borchart went on top of the car, and, in trying to replace it with another pole, discovered that the spring which held the pole in place was broken. Plaintiff held the pole in place while the motorman guided the car to the

2. SAME: contributory negligence: evidence.

barn.  On starting back, plaintiff stood, but, as the pole when the car turned came near pulling him off, he got down on one knee, and shortly after it passed C Avenue a span wire designed to hold the trolley wire in place caught and pulled him from the car.  He testified that:

When I got near that span wire beyond C Avenue, the trolley pole came off the wire, and I just got the pole replaced on the wire and turned around as I got a glimpse of the span wire that struck me about here, the top edge of the shoulder, and knocked me off the car and broke this leg just above the ankle.  I couldn't tell how far away from this span wire we were when the wheel came off the trolley.  I didn't see the span wire before it struck me.  I got a glimpse of it just as it struck me, but I felt it strike me, and felt pain at the upper edge of my shoulder about where it struck me.  There was a running board probably a foot wide on top of the car, and I held my knee on it and my other foot down at the side of it, and I was holding the trolley pole, and, when I got within about twenty or thirty feet of the span wire, the trolley pole came off of the wire, and I looked around and straightened it up, and then just turned around and got a glimpse of this span wire as it struck me.  I had not seen the span wire before that.  Up to this time I had no difficulty with any other span wires or with the trolley wire until I was struck at C Avenue.  The span wire is the wire that holds the trolley wire in place in the center of the track, and is connected to posts in the parking at the sides of the streets.  I was knocked to the ground on the west side of the car.

He was facing the direction in which the car was moving, and could have seen the wires, had he looked, as they were in plain view.  He was aware of their existence, but gave them no thought or attention as he was:

"Engaged in holding the trolley pole. . . . It was getting pretty heavy down that part of the trip.  When I put the wheel on the trolley wire immediately before the accident, I was looking back at the wire to adjust it.  I put it on the wire.  I would have to see the wire to put the pole on

it.  I suppose the wire was above my head. . . .  I held the pole to one side of my shoulder.  The wire would be to the side, straight up and to one side, and the trolley wire would be on a line with the pole and the side of my shoulder and above it.  I would have to use force in holding the trolley wire up.  It took quite a bit of energy to hold the pole to the wire.  A person would have to use a good strong grip to hold it up against the wire in this position.  The pole was heavy and hard to hold up.  When the wheel would slip from the trolley wire, the trolley wire would go up and down.  By my holding the pole with force against the wire its coming off would let the wire down.

Plaintiff's negligence, if any, was in failing to avoid the span wire.  None other had interfered nor for that matter had been observed.  Presumably, as the car was eleven feet and five inches high, the wires should have been more than six feet above it and have involved no danger.  Plaintiff was bound, however, to make use of his senses, and, even though he may not have noticed the wires, he knew they were there and must be assumed to have seen what a man of ordinary diligence would have observed under like circumstances.  He had been pressing the trolley wire upward continuously, so that the wire near him might have been somewhat higher than the span wire, and, as the latter was about thirty feet ahead at the time the wheel at the end of the pole got off the trolley wire, the elevation of the span wire above the car would then have been difficult to determine.  Of necessity he looked back in connecting with the trolley wire again, and in doing so his attention was diverted so that he did not see the cross-wire, as otherwise he must have done, until it struck him.  Had he noticed it an instant sooner, he could have dropped to the car, and thereby have avoided injury.  The inquiry then is reduced to whether upon the wheel at the pole becoming disconnected from the wire he ought from what he then knew to have anticipated that, should he turn back to connect the pole with the wire again at that time, he

likely would be caught by the span wire. Owing to the circumstances mentioned, we are of opinion that it can not be said conclusively that a person of ordinary prudence would not have done what plaintiff did, and therefore the issue as to whether he was negligent was for the jury.

III.    The third instruction is severely criticised, and for this reason may be set out:

The plaintiff was bound to use reasonable ordinary care and vigilance in undertaking to ride the car in question to the barn, and is chargeable with all the knowl-edge that in the exercise of reasonable and ordinary care and vigilance he might and should have acquired as regards any perils or hazards in what he undertook to do. In determining this question, you must take into consideration the character of the work he was undertaking to do, which was not the character of work usually performed by the conductors upon the line of the defendant company, the rules of the defendant for his conduct and his knowledge thereof, the situation at the exact time of the accident, as to whether or not he saw or should have seen that the span wire, by which he claims to have been knocked from the car, was in such a condition as to be dangerous to a man in the position in which he was situated on top of the car, whether or not, admitting that he saw or should have seen the wire in question, such a situation arose as momentarily attracted his mind from the dangerous position of the wire, as claimed by him; and you must also take into consideration the other facts and circumstances as they existed at the time of his injury. And after taking into consideration all of these things, un-less the plaintiff has satisfied you by the greater weight or value of the evidence that the injury of which he complains was not caused or contributed to in any manner by his own negligence, then you are instructed that your verdict must be for the defendant.

3. SAME: instruction.

First, it is said that the recital of matters to be con-sidered "amounts to an effort to palliate and excuse" plain-tiff's negligence. But this is without foundation. Neces-sarily matters bearing on plaintiff's conduct only were al-

luded to, and it was not error to mention those in his favor as the fact that he was not engaged in his usual occupation as well as to direct attention to those having a contrary tendency. It is not open to the criticism of enumerating matters bearing in one direction and omitting all others as were the instructions condemned in the numerous authorities cited. The propriety of referring to his attention being diverted from observing the position of the wire ought not to be questioned. Suppose he had been giving the wire no concern. This may have been owing to its elevation out of harm's way. It does not follow that he might not have seen the cross-wire but for such diversion. Surely one's attention may be so diverted that he will not discover danger which he otherwise would even though he had given it no previous thought. Complaint is made of that portion of the instruction which limits the jury to facts and circumstances surrounding him at the time of the injury. What other facts and circumstances would appellant have considered? Certainly those relating to some other time would not have been pertinent to the issue being tried.

Another criticism is of that portion of the instruction suggesting consideration of the situation at the exact time of the accident, as to whether or not he saw or should have seen that the span wire by which he claims to have been knocked from the car was in such condition as to be dangerous to a man in the position in which he was situated on the top of the car. This was correct, for, unless he ought to have seen the wire so placed as to render it dangerous to a man in his situation, he was not negligent. This did not exclude, as he argued, what may have happened previously or plaintiff's situation with reference to the wire prior to the time of the accident. Indeed, these matters seem to have been contemplated and the design of the court to have been to concentrate attention on the proposition as to whether plaintiff, in view of what had pre-

viously occurred, should, at the time of the accident, have observed the wire and its dangerous proximity. If in the exercise of reasonable care he should have seen the wire, then, of course, he could have avoided it by dropping to the car, and could not recover. Though not inclined to commend the language of the instruction, we are not disposed to exaggerate expressions which could not have misled the jury into reversible errors.

IV.     Appellant contends that the evidence failed to show that plaintiff was at work within the scope of his employment when injured, and seems to rely upon a rule of the company reading: "All breakage or imperfections in the track or overhead system must be reported by both conductor and motorman in their daily reports. When any such require immediate repair notice must be sent at once to the superintendent's office." Upon discovery that the spring was broken, there was some discussion as to whether the office should be telephoned for a car, but this was not done. Counsel argue that plaintiff was without authority because of this rule to do otherwise than notify the company. It is by no means clear that the breakage was within this rule. What was the "overhead system"? It might well have been construed to be the network of wires above through which the power was applied, and not the cars or any of their attachments. The platform containing the spring was on the car, and an extra pole was carried to replace any injured while out on the track. But, if there be doubt, the rule had been construed as suggested, for the evidence was undisputed that employees in event of like accidents customarily returned the cars to the barn as this was being taken at the time of the injury. Moreover, the superintendent observed plaintiff on top of the car holding the trolley pole shortly before the accident without interposing any objection.

It was also competent to prove this custom of the em-

4. SAME: scope of employment.

ployees at variance with the rule, if it was, and acqui-
escence therein by the officers of the company as establish-

5. SAME:
evidence
of custom:
waiver.

ing waiver thereof as the court instructed. *Lowe v. Railway,* 89 Iowa, 420. The evidence justified the finding that plaintiff was
acting within the scope of his employment.

V.  It appeared that the motorman had been longest
in defendant's service, and that he directed plaintiff to re-
main on top of the car and hold the trolley pole, and evi-

6. SAME:
admission of
evidence:
harmless error.

dence was introduced over objection to the effect that, when a car was disabled, the employee longest in the service was in con-
trol.  On what theory this evidence was received is not
apparent, unless, as suggested by appellant, it was that the
motorman in such a situation became a vice principal.  Be
this as it may, the court instructed that the motorman was
but a fellow servant of plaintiff and any directions given
him by the former were not binding on the defendant.
The latter contends that the evidence was prejudicial, but
does not indicate in what respect.  In view of this instruc-
tion, it seems impossible that whether such a custom ex-
isted could have had the slightest influence on the result.

Other rulings criticised are approved, and the judg-
ment is *affirmed.*